**STATE of Minnesota, Respondent,**

v.

**Leon James MULLER, Appellant.**

**No. C6–83–2060.**

Court of Appeals of Minnesota.

Nov. 6, 1984.

Hubert H. Humphrey, III, Atty. Gen., Paul R. Kempainen, Sp. Asst. Atty. Gen., St. Paul, Michael Lynch, Kandiyohi County Atty., Willmar, for respondent.

C. Paul Jones, State Public Defender, Brian I. Rademacher, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by POPOVICH, C.J., and HUSPENI and FORSBERG, JJ., with oral argument waived.

## OPINION

FORSBERG, Judge.

On October 19, 1983, appellant was found guilty by a jury of theft over $2500 in violation of Minn.Stat. § 609.52, subds. 2(1), 3(1) (1982). Appellant claims the State's evidence was insufficient, as a matter of law, to sustain his conviction. Appellant also claims the trial court erred by admitting certain Spreigl and expert testimony. Last, appellant contends the trial court's imposition of $10,000 restitution was erroneous because the jury did not reach a conclusion regarding the specific amount of theft. We affirm.

## FACTS

Appellant was the manager of the East Side Gas Station in Willmar, Minnesota, between April 1 and July 23, 1983. During that time the station was leased and operated by Avis and Eldon Hanson. When the Hansons bought the business on April 1, 1983, they retained appellant in the same capacity he had worked for the previous operator of the station. The previous owner, James Splinter, taught appellant the specific bookkeeping procedures that were used at the station.

Appellant was responsible for reading the gas pumps, preparing daily balance

sheets, and delivering daily deposits to the Hanson's home. The Hansons reviewed the station's daily records at the end of each month. At the end of April 1983, appellant brought that month's book of daily balance sheets to Avis Hanson for inspection. She discovered the daily sheets for April reflected $4,225.43 more income to the station than she received from appellant for deposit.

In July 1983, Avis Hanson asked appellant to begin sending bills that would reflect the total amount owed. Prior to that time, appellant sent only that month's charges and did not indicate an account balance.

Shortly after appellant sent these new bills, many customers called the station to complain of overcharges. These overcharges were the result of inflated figures contained in a new accounts receivable ledger that was prepared by appellant in May 1983. The entries in both the old and new ledgers were in appellant's handwriting. The accounts receivable discrepancies totaled over $5,000.

The Hansons became concerned and met with appellant on July 23, 1983. Hansons and appellant reached a mutual understanding terminating appellant's employment. At this meeting, appellant suggested the Hansons have their business consultant, Mark Steingraber, go over the books to determine the amounts of any shortages.

Steingraber has a business degree and seven year's experience in retail management. He has had formal courses in bookkeeping and accounting, but he is not an accountant and has not been trained in auditing procedures. As part of his business consulting, Steingraber prepares financial statements for 55 small businesses.

Steingraber's review disclosed other discrepancies in the East Side Station's books. The figures recorded on the daily balance sheets for cash on hand at the end of one business day and cash on hand for the beginning of the next business day indicated shortages on three separate occasions.

A jury trial was held October 18–19, 1983. The jury found appellant guilty of theft of property with a value exceeding $2500.

The county attorney certified the victim's losses were as follows:

1. Overstatement of Accounts Receivable:

| | |
|---|---|
| Coca Cola | $100.00 |
| Ray Nielsen | $2,400.00 |
| Willmar Farm Center | $1,000.00 |
| Haats Construction | $500.00 |
| Jerry Krueger | $1,000.00 |
| Jacobsen Line Clearing | $500.00 |
| Total of overstated accounts: | $5,500.00 |

2. Difference between cash end of day amount for May 2, 1983 and cash start of day amount for May 3, 1983:

$489.40

3. Difference between amounts shown on daily record as being cash paid out on June 24, 1983:

$1,000.00

4. Difference between cash end of day amount for June 30, 1983 and cash start of day amount for July 1, 1983:

$3,386.30

5. Amount of cash shortage on July 23, 1983:

$2,904.54

| | |
|---|---|
| Total: | $13,280.24 |

The appellant claimed that $10,000.00 was in excess of what he stole, but offered no other figure. He only argued that the determination of the exact amount of the loss should have been submitted to the jury.

Appellant was sentenced to the custody of the Commissioner of Corrections for 18 months with execution stayed on the condition appellant serve 120 days in jail and pay restitution of $10,000.

## ISSUES

1. Was the evidence sufficient to support the jury's verdict finding appellant guilty of theft?

2. Did the trial court err by admitting Spreigl evidence regarding a prior incident similar to the crime charged?

3. Was Mark Steingraber qualified to give expert testimony concerning the bookkeeping procedures used at the East Side Station?

4. Was the trial court's imposition of $10,000 restitution a proper exercise of its authority to impose conditions of probation?

## ANALYSIS

■ This court's evaluation of the sufficiency of evidence is governed by the principles set forth in *State v. Merrill*, 274 N.W.2d 99 (Minn.1978):

> In reviewing a claim of insufficiency of the evidence, we are limited to ascertaining whether, given the facts in the record and the legitimate inferences that can be drawn from those facts, a jury could reasonably conclude that the defendant was guilty of the offense charged. We cannot retry the facts, but must take the view of the evidence most favorable to the state and must assume that the jury believed the state's witnesses and disbelieved any contradictory evidence. If the jury, giving due regard to the presumption of innocence and to the state's burden of proving the defendant's guilt beyond a reasonable doubt, could reasonably have found the defendant guilty, that verdict will not be reversed.

*Id.* at 111 (citations omitted).

Appellant was the only person who made significant entries in the East Side Station books. Avis Hanson testified there was a discrepancy in the books between the amounts received at the station and the amounts appellant delivered to the Hansons for deposit. Appellant took the books, later explaining there was an error in the accounts receivable account. The State hypothesized appellant juggled the accounts receivable to hide his theft. This hypothesis was supported by the discrepancies between the old and new ledgers.

The State's hypothesis is further supported by the evidence of overbilling that occurred in July 1983. Appellant's trial attorney admitted there was money missing and that the issue was who took it. The jury could have considered the prior incident between appellant and Splinter as establishing the identity of the thief. Moreover, appellant was the only person

capable of performing the series of actions necessary to accomplish this theft.

Appellant claims the circumstantial evidence in this case is insufficient because the evidence does not indicate appellant took any money.

> [C]ircumstantial evidence in a criminal case is entitled to as much weight as any other kind of evidence so long as the circumstances proved are consistent with the hypothesis that the accused is guilty and inconsistent with any rational hypothesis except that of his guilt.

*State v. Fossen*, 282 N.W.2d 496, 509 (Minn.1979) (quoting *State v. Morgan*, 290 Minn. 558, 561, 188 N.W.2d 917, 919 (1971)).

The evidence in this matter does not support any other rational hypothesis except that of appellant's guilt insofar as the accounts receivable are concerned. Appellant's claims regarding the two other areas of theft are moot since the accounts receivable theft was well over the statutory requirement of $2,500. *See* Minn.Stat. § 609.52, subds. 2(1), 3(1) (1982).

■ 2. Appellant claims the trial court erred by admitting Splinter's testimony concerning a prior incident where appellant took $1,000.

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Minn.R.Evid. 404(b).

The State offered evidence of this prior incident to establish motive, plan and identity. The trial court held an in camera hearing and found the requirements of *State v. Billstrom*, 276 Minn. 174, 178–79, 149 N.W.2d 281, 284–85 (1967), were met. The trial court also found the probative value of the evidence outweighed its prejudicial effect. *See State v. Titworth*, 255 N.W.2d 241, 246 (Minn.1977). Likewise, the trial court cautioned the jury regarding

the use of this evidence. This evidence was properly admitted for the limited purpose of showing intent and proving identity. Minn.R.Evid. 404(b); *see State v. Williams,* 307 Minn. 191, 194–96, 239 N.W.2d 222, 224–25 (1976).

 3. Appellant claims the trial court committed reversible error by permitting Mark Steingraber to testify as an expert. Appellant claims Steingraber should not have been permitted to testify as an expert because he was not an accountant or certified in auditing procedures.

In *Schack v. Schack,* 354 N.W.2d 871 (Minn.Ct.App.1984), this court said:

> The admission of expert testimony lies within the sound discretion of the trial court. '[I]ts ruling will not be reversed unless it is based on an erroneous view of law or is clearly not justified by the evidence.'

*Id.* at 873 (citations omitted); *see State v. McGee,* 324 N.W.2d 232, 234 (Minn.1982); *State v. Helterbridle,* 301 N.W.2d 545, 547 (Minn.1980).

The trial court did not abuse its discretion. Steingraber had the "knowledge, skill, experience, training, or education" necessary to qualify as an expert. Minn.R. Evid. 702.

> The qualifications of the expert need not stem from formal training, and may include any knowledge, skill, or experience that would provide the background necessary for a meaningful opinion on the subject.

*Id.* committee comment—1977.

Appellant contends Steingraber's testimony was inadmissible because better experts, such as an accountant or professional auditor, could have been used. This contention goes to the weight and not the admissibility of Steingraber's testimony. *See Schack,* 354 N.W.2d at 874; *see also Northwest Airlines, Inc. v. Commissioner of Revenue,* 265 N.W.2d 825, 831, n. 9 (Minn.1978).

4. The trial court ordered appellant to pay $10,000 restitution as a condition of probation. Appellant claims this amount is not supported by the record.

 A trial court has wide discretion in ordering reasonable restitution. *See* Minn.Stat. §§ 609.135, subd. 1, 611A.04 (1982 & Supp.1983). The trial court's order of $10,000 restitution is not an abuse of discretion.

### DECISION

The evidence was sufficient to support the jury's verdict finding appellant guilty of theft. The trial court properly admitted Spreigl evidence regarding a prior incident similar to the crime charged. The State's expert was qualified to give expert testimony concerning bookkeeping procedures. The trial court's imposition of $10,000 restitution is not an abuse of discretion.

Affirmed.