**STATE of Minnesota, Respondent,**

v.

**Clifford James LARSON, Appellant.**

**No. C6–85–2063.**

Court of Appeals of Minnesota.

Sept. 16, 1986.

Gary B. Bodelson, Holstad & Bodelson, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Alan L. Mitchell, St. Louis Co. Atty., James B. Florey, Asst. Co. Atty., Virginia, for respondent.

Heard, considered and decided by POPOVICH, C.J., and WOZNIAK and RANDALL, JJ.

## OPINION

RANDALL, Judge.

Appellant Clifford Larson appeals from the judgment and sentence for receiving stolen property, Minn.Stat. § 609.53, subd. 1(1) (1984), and from the denial of his subsequent post-trial motions. He claims the evidence was insufficient to sustain the conviction, that the trial court erred in its evidentiary rulings, that the trial court abused its discretion in ordering substantial restitution, and that the trial court erred in denying his request for work release privileges. Appellant also claims that the trial court erred in ordering the restitution docketed as a civil judgment. We affirm on all issues.

## FACTS

Sometime between August 31 and September 11, 1984, five large metal bushings were taken from the Eveleth Taconite Company. These bushings were large, round, cylindrical objects used to lubricate shafts in the crusher operations and weighed approximately 1300 pounds each. Eveleth Taconite discovered the missing bushings and began an investigation. As part of its investigation, it sent out flyers, containing a description and photograph of the stolen bushings, to several scrap dealers in northeastern Minnesota and the Twin Cities.

According to Michael Silverman, manager of Great Western Iron and Metal Company in St. Paul, on September 10, 1984, he received a telephone request for a quotation on the price of brass. About an hour later the person he had talked to arrived in a flatbed truck with bushings. He was with two other men. They agreed on a price of .37 cents per pound and the man identified himself as Clifford Larson. Larson told Silverman he obtained the bushings from wrecking an old building. Larson received a check for $2364.30 for 6390 pounds of brass. Silverman identified the bushings from the flyer.

Investigation showed that the bushings purchased by Silverman were the ones stolen from Eveleth Taconite. Four of the bushings were brand new; all of them, however, had been damaged and made to appear old and used through the use of a power disc grinder and/or a chisel, hammer or blow torch. The damage to the bushings occurred on the areas containing identification (numbers, logos, insignias) and represented a considerable effort at preventing identification.

Appellant was employed as a welder at his family business, McKenzie Welding. He testified that he found the bushings on September 9, 1984, in a large open area known as the "Spolarich Farm." The Spolarich Farm is a short distance from a main gate leading to Eveleth Taconite. Appellant said that he took the bushings because they appeared abandoned. He claimed he went back to McKenzie Welding, got a flatbed truck and hoisted the bushings onto the truck. He claimed he took them back to McKenzie Welding and left the next morning for the Twin Cities to try to sell the bushings. He said he did not compare prices with dealers on the Iron Range or other dealers in northern Minnesota. He claimed the two companions who were with him at the Great Western and Iron Company were hitchhikers he picked up near Carlton, Minnesota. Appellant did not know their names and was only able to give a general description of them. Appellant testified that after receiving the check from Great Western he immediately cashed it, dropped off the hitchhikers, went shopping, and returned home.

Appellant was charged with theft and receiving stolen property. He was convicted of receiving stolen property. He was sentenced to an 18 month term, execution was stayed and he was placed on probation for five years. Appellant was also fined $5000. The conditions of probation included paying restitution of $34,681 to Eveleth Mining and serving nine months at Northeastern Regional Correctional Center at Saginaw, Minnesota.

## ISSUES

1. Was the evidence sufficient to sustain appellant's conviction?

2. Did the trial court err in its evidentiary rulings?

3. Did the trial court err in setting the amount of restitution?

4. Did the trial court abuse its discretion in denying a request for work release under the Huber Law?

5. Did the trial court err in docketing the restitution order as a civil judgment pursuant to Minn.Stat. § 611A.04, subd. 3 (1984)?

## ANALYSIS

### I.

### *Sufficiency of the Evidence*

Appellant claims the evidence was insufficient to support his conviction. We have reviewed the record and find sufficient evidence to support the jury verdict. Appellant's claim that he lacked the requisite intent was vigorously argued by defense counsel but rejected by the jury. Appellant did not deny he had possession of the stolen bushings or that he sold them for scrap. Appellant's sufficiency claim centers around his position that he presented the jury with a reasonable alternative other than willful theft.

Appellant notes that through his testimony and that of other witnesses the jury heard evidence that some employee working for Eveleth Taconite could have stolen the bushings and could have taken them in a company truck to the field in question and dumped them there intending to return later. Appellant argues that employee theft is a reasonable explanation for how the bushings got to the field where he claimed he found them abandoned. Appellant contends that since the State did not disprove this theory, the evidence was insufficient as a matter of law to convict him since the State's case was wholly circumstantial. Thus, he argues, if there are two equally consistent inferences to be drawn from the evidence, the jury must be instructed in a case involving only circumstantial evidence that the defendant is entitled to the benefit of the doubt and should be acquitted.

The problem with appellant's theory is that it is premised on the notion that if a jury is presented with what a defendant feels is a reasonable explanation of what occurred, the jury somehow must believe it. That is not the law. A defendant is entitled to present whatever theories of

defense which can be justified from the evidence to the jury. The jury is not obligated to believe any particular witness's testimony when it involves facts susceptible of differing interpretations. It is apparent from the verdict that the jury failed to accept the defense's theory of the case and felt that the State established the essential elements of the crime. The jury was properly instructed and we will not disturb its verdict. *See State v. Merrill*, 274 N.W.2d 99, 111 (Minn.1978); *State v. Brown*, 376 N.W.2d 451 (Minn.Ct.App. 1985).

## II.

### Evidentiary Rulings

Appellant challenges some of the trial court's evidentiary rulings. We find no abuse of discretion or prejudicial error.

### Expert Qualifications

James Rossi, an Eveleth Taconite Company employee for 20 years, was a mine engineering technician whose job included making maps and doing volumetric surveys. The maps are made daily. He testified that in drawing up the maps of Eveleth's property, he had to become familiar with the general boundaries of its property. Over objection, Rossi testified that a map he prepared was from an aerial photograph of the dock and general area where the bushings were stolen. He also testified that the "Spolarich Farm" was owned by Eveleth.

■ Appellant contends that Rossi was not qualified to testify about whether the farm was on Eveleth's property because Rossi was neither an attorney nor a qualified land surveyor. The trial court ruled that he was a qualified witness based on his job responsibilities and lengthy experience in the mine engineering department. This ruling was proper. Further, because actual ownership of the property was not an element of the prosecution's case or the defense, it is difficult to see any prejudice to appellant's case. Appellant's claim at trial was that he thought the bushings were abandoned. Thus, ownership of the

bushings or where they were found would not be crucial. Appellant never claimed that the bushings were his and had no way of knowing the fee title ownership of the land where he claimed to have found the bushings. We find no error in the trial court's allowing Rossi to qualify as an expert.

### Witness Impeachment

■ On direct examination Michael Silverman, manager of Great Western, was asked whether he ever asked appellant how he obtained the bushings. Silverman replied that he believed he would have but could not recall. Silverman was then asked if he recalled telling Sergeant Guy Johnson of the St. Louis County Sheriff's Department on October 2, 1984, that appellant told him the bushings came from wrecking an old building. Over objection that the State could not impeach its own witness, Silverman answered that he did. The trial court properly overruled the objection. *See* Minn.R.Evid. 607.

### Relevancy

■ Defense witness Thomas Schurer was asked on direct examination whether he had seen other areas containing scrap iron and junk. The trial court sustained an objection by the prosecutor on relevancy grounds. Schurer had laid a foundation that he was familiar with the general area. The testimony could have come in for whatever weight the jury would choose to give it. However, objections on the grounds of relevancy are largely within the discretion of the trial court and will not be overturned absent a clear abuse of discretion and a showing of prejudice. This ruling was not such an abuse of discretion.

### Non-custodial Interrogation

■ During pre-trial proceedings the court ruled that statements appellant made to Sergeant Johnson were admissible despite the lack of a *Miranda* warning. Sergeant Johnson had called appellant on the telephone and asked him to come in to discuss some brass located at Great West-

ern. Appellant came in his own vehicle and talked with Sergeant Johnson. Sergeant Johnson explained that they were in the investigatory stage, that appellant was not under arrest, and that when the case was completed the reports would be sent to the county attorney's office for any possible charges. Appellant discussed the matter with Sergeant Johnson and then left. The trial court properly found that appellant was not in custody while interrogated and thus a *Miranda* warning was not required. *Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977).

## III.

*Restitution*

 The trial court ordered restitution of $34,681, the amount requested by Eveleth Taconite. At trial, Fred Gams, sales representative for Allis Chalmers Company, the manufacturer of the new bushings, testified that the value of the three bottom shell bushings was $9600 each and that the value of the inner eccentric bushing was $14,509. There was evidence in the record that the minimum value of the three bushings was $3,400 each based on the price of bushings manufactured by competitors of Allis Chalmers. The scrap value received by Eveleth after paying $2364.30 to Great Western was about $2,720. The trial court has wide discretion in ordering a reasonable amount of restitution. Minn.Stat. § 609.135, subd. 1 (1984); *State v. Olson*, 381 N.W.2d 899, 900 (Minn.Ct.App.1986); *State v. Muller*, 358 N.W.2d 72, 76 (Minn.Ct.App.1984). The amount of restitution ordered by the trial court was not an abuse of discretion.

 The claim that appellant will be in violation of probation because of his inability to pay is not before the court at this time. It may be raised at the time of any claimed probation violation.

## IV.

*Huber Law*

 The trial court denied appellant's request to be released under the Huber Law, Minn.Stat. § 631.425 (1984). The trial court is in the best position to determine if the defendant is entitled to work release privileges. Such determination will rarely be reversed and we find no abuse of discretion here.

## V.

*Docketing of Restitution Order*

Effective August 1, 1985, restitution orders may be docketed as a civil judgment in district court and may be enforced by any person named in the order to receive the restitution. Minn.Stat. § 611A.04, subd. 3 (1984). Appellant's sentencing occurred on October 21, 1985. The trial court subsequently granted the State's request to enter the restitution amount as a civil judgment.

Appellant claims the statute cannot apply to him because although he was sentenced after August 1, 1985, the crime was committed before that date. Hence, he contends that using the statute involves an improper retroactive application of the law and an ex post facto law.

 We do not agree. As the trial court found, the critical date under the statute is the date of sentencing, not the date of the offense. The trial court stated that "the intention of the legislature appears clear to this Court to be that all orders of restitution made after the effective date of the statute shall have the effect stated in the statute." We agree with these comments. *See State v. Friend*, 385 N.W.2d 313 (Minn.Ct.App.1986) (holding that the testimony of a physician, based on an exception to the physician-patient privilege in a statute, was proper where the statute became effective after the date of the communication but before the date of trial).

## DECISION

The evidence was sufficient to convict appellant of receiving stolen property. Trial and omnibus hearing evidentiary rulings were not erroneous. Trial court did not

abuse its discretion in ordering substantial restitution or in denying appellant Huber Law privileges for work release. The trial court did not err in ordering the restitution docketed as a civil judgment pursuant to Minn.Stat. § 611A.04, subd. 3.

Affirmed.