STATE of Minnesota, Respondent,

v.

Duane Arvid ANDERSON, Appellant.

No. C9–86–1547.

Court of Appeals of Minnesota.

May 12, 1987.

Review Denied July 22, 1987.

Hubert H. Humphrey, III, Atty. Gen., James B. Early, Sp. Asst. Atty. Gen., St. Paul, James H. Martin, Co. Atty., Charles C. Glasrud, Asst. County Atty., Morris, for respondent.

C. Paul Jones, State Public Defender, Elizabeth B. Davies, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by POPOVICH, C.J., and HUSPENI and MULALLY*, JJ., with oral argument waived.

## OPINION

EDWARD D. MULALLY, Judge.

Appellant Duane Anderson was convicted by a jury of receiving stolen property, Minn.Stat. § 609.53, subd. 1(1) (1984), and handling stolen livestock of a value in excess of $300, Minn.Stat. § 609.551, subd. 2

(1984). Appellant's primary contention on appeal is that the evidence was insufficient to prove that he knew that calves found on his farm were stolen. We affirm the convictions.

## FACTS

In the summer of 1985, appellant, his wife, and five children lived on a rented farm in Hancock, Minnesota. Appellant contends that in May and June, 1985, he advertised on two local radio stations and in stores that he wanted to buy calves. The radio stations do not keep records of such call-ins. Appellant had bought calves for 10 years to raise to slaughter for his family's use. Appellant also raised chickens and pigs. Appellant was working temporarily as a full-time driver for UPS.

Leonard Wulf, his sons, and some other relatives operate Wulf Limousin Farms. Limousin is a somewhat distinctive breed of beef cattle. On June 9, 1985, two one-week old bull calves were stolen from Leonard Wulf's farm. On June 22, 1985, two four to five day old heifers were stolen from Wulf's farm. The thefts were reported to police, but Wulf asked for no publicity and no news release was issued by the police. Wulf lived about 7 to 10 miles from appellant.

Wulf asked friends and neighbors to look for the calves. On July 12, 1985, the calves were observed on appellant's property.

Stevens County Deputy Sheriff Steven Hammond obtained a search warrant and went to appellant's farm the next day. Wulf went with him and identified the four calves found in a converted granary. Wulf noticed that identification tags which had been placed in the calves' ears were missing. Deputy Hammond talked to appellant's wife. Hammond testified she told him appellant had purchased them from an acquaintance. Appellant's wife denied telling Hammond this and claimed she told Hammond appellant bought them from someone he had not known.

Appellant, who was not at home at the time of the search, went to the sheriff's

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

office a few days later. He told Hammond he had purchased the four calves from two strangers. He said the men called him and brought the calves to his farm. Appellant did not obtain a receipt. Appellant gave a general description of the men and their truck. Appellant denied knowing that the calves were stolen and told Hammond that he would not have purchased the calves if he had known they were stolen. Appellant described his efforts in locating the men— he went out to a farm and checked with bars or liquor stores in nearby towns to see if anyone had indicated they had calves for sale.

Appellant was later arrested and charged with receiving stolen property and handling stolen livestock. Appellant and his wife testified that after they bought the calves, he placed them in the granary which was surrounded by an open fence, in full view of passing motorists from a road 100 to 125 feet away. Appellant testified that he was not suspicious of the sale because he had previously bought livestock from people who brought animals out to his farm and he customarily paid cash. Appellant also testified that it was common to buy and sell young calves. Hammond and Wulf, however, testified that the sale of such young calves was extremely uncommon and unlikely.

Leonard Wulf testified that he drove by appellant's home after June 23, 1985, on at least one occasion while looking for the calves and he recalled seeing the granary door closed. On rebuttal, Wulf testified he was sure the granary door was shut. Wulf stated he could not recall looking at the barn door on appellant's property.

A neighbor of appellant, Arnold Koehl, also testified as a rebuttal witness. He had been asked by the Wulfs to watch for the missing calves. Koehl testified that he drove by appellant's farm about once each day during the June 23 to July 13 period. Koehl testified the door to the granary was closed during this time period and that sometime before the search warrant was executed, the door was open but boards had been placed across the door.

Appellant was convicted of receiving stolen property and handling stolen livestock. He was sentenced to a term of 18 months imprisonment with execution stayed. Appellant was placed on probation for five years on condition that he serve 30 days in jail and pay $300 restitution.

## ISSUES

1. Was the evidence sufficient to sustain appellant's convictions?

2. Was the evidence sufficient to sustain the jury's finding that the calves were worth more than $1000?

3. Did the trial court err in allowing the State to call Koehl as a rebuttal witness?

4. Did the trial court abuse its discretion in determining the amount of restitution?

## ANALYSIS

### I.

Appellant's convictions were based on circumstantial evidence. A jury is in the best position to evaluate circumstantial evidence surrounding the crime, and its verdict is entitled to due deference. *State v. Berndt*, 392 N.W.2d 876, 880 (Minn.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 909, 93 L.Ed.2d 859 (1987); *State v. Daniels*, 380 N.W.2d 777 (Minn.1986).

As stated in *Berndt:*

The circumstantial evidence in a criminal case is entitled to as much weight as any other kind of evidence so long as the circumstances proved are consistent with the hypothesis that the accused is guilty and inconsistent with any rational hypothesis except that of his guilt.

*Berndt*, 392 N.W.2d at 880 (quoting *State v. Jacobson*, 326 N.W.2d 663, 666 (Minn. 1982)). The evidence as a whole need not exclude all possibility that the defendant is innocent, it must only make such a theory seem unreasonable. *State v. Anderson*, 379 N.W.2d 70, 78 (Minn.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 2248 90 L.Ed.2d 694 (1986). *See also State v. Larson*, 393 N.W.2d 238 (Minn.Ct.App.1986) (jury is free to disbelieve defendant's testi-

mony setting forth alternative "reasonable explanation" of events).

On appeal this court does not retry the facts but must take the view of the evidence most favorable to the State and must assume that the jury believed the State's witnesses and disbelieved any contradictory evidence. *State v. Turnipseed,* 297 N.W.2d 308, 313 (Minn.1980). If the jury, giving due regard to the presumption of innocence and to the State's burden of proving defendant guilty beyond a reasonable doubt, could reasonably have found the appellant guilty, that verdict will not be reversed. *Id.*

■ To justify the convictions, the burden was on the State to prove that appellant knew the calves were stolen. Appellant argues that there was no evidence presented which allowed the jury to draw the inference that he knew the calves were stolen. The State points to the following circumstances as establishing sufficient proof in this regard:

■ 1. Appellant was in possession of the stolen calves. Appellant contends that he had advertised for calves and claimed that their purchase was offered in response to the advertisement. Appellant handled all of his finances on a cash basis. He claimed that he paid $60 in cash per calf. Unexplained possession of stolen property within a reasonable time after the theft is sufficient to support a conviction. *State v. Wiberg,* 296 N.W.2d 388, 397 (Minn.1980); *State v. Peterson,* 375 N.W.2d 93, 95 (Minn.Ct.App.1985). Under the circumstances existing here, a time period of approximately three weeks after the theft is not "unreasonable."

2. Immediately after birth, all four calves had been tagged in their right ears. Someone had removed the calves' ear tags. Jeral Wulf, Leonard Wulf's son, testified that when the calves were found on July 13th, there was a visible scab from an ear tag wound where the tags had been removed.

3. Appellant kept the calves closed up inside the granary after the theft. While appellant and his wife disputed this claim, there was testimony that the granary doors were observed daily, and that they were closed from June 23rd almost up to the time the search warrant was served. Although the doors were opened sometime before the service of the warrant, boards had been nailed across the opening.

4. The State contends that the testimony of appellant and his wife shows guilty knowledge. The State argues that appellant's wife lied about how appellant acquired the calves by originally claiming he obtained them from someone he knew, and at trial claiming he obtained them from someone he did not know. The State contends that appellant's wife lied in testifying that she and her family bought calves for their own use and then testifying on cross-examination that they occasionally sold them. Appellant's testimony that it was common for beef calves to be separated from their mothers at such an early age was disputed by witnesses for the State who testified to the contrary.

5. The State argues that appellant's entire line of testimony was vague, indefinite, and intentionally tailored so that it is difficult or impossible to verify.

Although the evidence was circumstantial, the jury was in the best position to evaluate it, and there was sufficient evidence consistent with the State's claim to support the jury's guilty verdicts. The State proved to the satisfaction of the jury beyond a reasonable doubt that the appellant knowingly received stolen property and knowingly handled stolen livestock.

## II.

■ Appellant denies that there was sufficient evidence to establish that the retail market value of the stolen calves totaled more than $1000 at the time of the theft. The owner of the calves, Leonard Wulf, testified that the minimum value of each calf was $400. The jury properly accepted Wulf's testimony as to value, since the owner of property may testify as to its value. *Lehman v. Hansord Pontiac Co.,* 246 Minn. 1, 6, 74 N.W.2d 305, 309 (1955).

### III.

▮ The trial court properly allowed Arnold Koehl to testify as a rebuttal witness for the State. Appellant claims that the State violated the discovery rules by not disclosing Arnold Koehl as a witness, before the beginning of the trial, and that the trial court abused its discretion in allowing him to testify.

It is clear from the facts of this matter that Arnold Koehl was a "rebuttal" witness, and the State's failure to provide his name prior to the omnibus hearing or prior to trial did not violate the provisions of Minn.R.Crim.P. 9.01, subd. 1(1)(a), which requires the prosecuting attorney to disclose, before the omnibus hearing, the persons "whom he intends to call as witnesses at the trial." Mr. Koehl was not called as a witness by the State in its case in chief. His testimony was a function of the trial as it developed. Mr. Koehl's knowledge as to the status of the granary doors was made known to the prosecution by Mr. Koehl only after appellant presented testimony in his case that he had kept the granary doors open at all times, and that the stolen calves were free to wander around in the open. The court strictly limited Mr. Koehl's testimony to rebutting such evidence. Nothing in the record indicates that appellant's counsel either asked for, or was refused, a continuance to prepare for cross-examination of Mr. Koehl. Although given the opportunity to do so, appellant's counsel stated that he did not wish to talk to Mr. Koehl before he testified.

While conceding that the State was not compelled to identify Mr. Koehl as the confidential informant mentioned in the search warrant, appellant contends that the trial court should not have allowed him to testify as a rebuttal witness. However, there is a distinction between the rules relating to the disclosure of confidential informants, and the rules relating to the disclosure of rebuttal witnesses. *See Syrovatka v. State,* 278 N.W.2d 558, 561–62 (Minn.1979); *cf. State v. Lindsey,* 284 N.W.2d 368, 373 (Minn.1979) (involving failure to disclose defense witnesses before trial). Mr. Koehl's status as a confidential informant did not in and of itself disqualify him from testifying as a rebuttal witness, and the trial court did not abuse its discretion in allowing him to so do.

### IV.

▮ Appellant claims that the victim did not sustain an economic loss of $300, and that the trial court abused its discretion in ordering appellant to pay restitution of $300. On the contrary, there is more than adequate evidence to support the trial court's finding that the victim sustained an economic loss of $300. There is testimony that because the calves were removed from their mothers at such an early age, they are no longer suitable for purebred seed stock and are probably suitable only for slaughter. Since the conduct of the appellant for which he was convicted was a direct cause of the victim's loss, even though he may have had no part in the actual taking, appellant should be held responsible for restitution under the court's broad powers. *See State v. Olson,* 381 N.W.2d 899, 900 (Minn.Ct.App.1986).

### DECISION

The State proved that appellant knew that the calves were stolen. The circumstantial evidence was consistent with the appellant's guilt, and inconsistent with any rational hypothesis other than guilt.

There was sufficient evidence for the jury's finding that the market value of the calves at the time of theft was in excess of $1000.

The trial court did not abuse its discretion in allowing Arnold Koehl to testify as a rebuttal witness.

The trial court did not abuse its discretion in ordering appellant to pay restitution to the victim in the sum of $300.

Affirmed.

HUSPENI, Judge (dissenting).

I respectfully dissent and would reverse the conviction. The State is required to prove beyond a reasonable doubt that appellant knew or had reason to know the calves were stolen. In order to rely on

circumstantial evidence to prove this element of the offense charged, the evidence must be inconsistent with any rational hypothesis other than appellant's guilt. *See State v. Berndt,* 392 N.W.2d 876, 880 (Minn.1986).

The evidence is not inconsistent with the hypothesis advanced by appellant that he merely followed his normal practice in buying calves for his own use. There had been no publicity about the theft of calves to prompt appellant to take additional precautions to guard against buying stolen calves. Although the calves' ear tags were removed, there is no evidence that appellant removed the tags or that the removal should have been apparent to him. Three weeks after the purchase, the calves were still at appellant's farm and were sufficiently visible to prompt a neighbor to inform law enforcement officials.

The State has failed to show that the circumstances here are inconsistent with appellant's innocence. As a result, I cannot conclude that the evidence presented by the State has, beyond a reasonable doubt, formed a complete chain leading directly to the guilt of appellant. *State v. Wahlberg,* 296 N.W.2d 408, 411 (Minn.1980). In the interests of justice, the conviction should be reversed.