STATE of Minnesota, Respondent,

v.

David W. HANSON, Appellant.

No. CX–86–1539.

Court of Appeals of Minnesota.

May 12, 1987.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Raymond Schmitz, Olmsted Co. Atty., Rochester, for respondent.

C. Paul Jones, Public Defender, Susan Maki, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by POPOVICH, C.J., and LANSING and RANDALL, JJ., with oral argument waived.

## OPINION

LANSING, Judge.

Appellant, indicted on alternate counts of first- and second-degree murder, was found guilty of manslaughter. The trial court sentenced him to 55 months imprisonment, an upward departure of 12 months, and ordered him to pay $2,000 in victim's funeral expenses. Appellant challenges the sentence aggravation and imposition of restitution. We affirm in part, reverse in part and remand.

## FACTS

In November 1984 David Hanson's wife, Marge Hanson, moved out of their Stewartville home. She was involved in a relationship with Michael Walker which she intended to continue. The couple's two children remained with Hanson, and he began dissolution proceedings in which custody and visitation were disputed.

Hanson testified that he believed Walker was a major cocaine dealer and was concerned about Walker's contact with the children. He suspected that Walker physically abused them. Hanson voluntarily provided information on Walker to drug enforcement authorities and contacted the family court mediator, who conditioned Marge Hanson's visitation privileges on Walker having no contact with the children.

Hanson also testified that he believed Walker was dangerous. Walker had threatened him with a gun, and he had heard rumors that Walker kidnapped his own child and shot at his ex-wife and a man who accompanied her to Texas to retrieve the child. He also heard rumors that Walker had killed a man in Spring Valley, Minnesota. Several people told Hanson that Walker threatened to harm him.

Hanson's behavior changed due to his growing fear of Walker. He changed the locks on his doors, kept the curtains drawn during the day, did not allow his children to play outside, and slept with a loaded shotgun under his bed. He began to receive nuisance phone calls and heard tapping on his window. Hanson testified that in one of the telephone calls Walker threatened to kill him and later pointed a gun at him from a car. A school counselor for one of Hanson's children observed that Hanson appeared to be under a great deal of stress.

During a family court hearing in September 1985, Marge Hanson told the court that Walker had moved to Texas. The new visitation order issued after the hearing deleted the restrictions pertaining to Walker. However, Walker returned to Minnesota and continued to have contact with the Hanson children when they visited their mother.

On the day of Walker's death, Marge Hanson picked up the children from Hanson's home at about 5:30 p.m. She took the children with her to her apartment in Rochester, where they met Walker. Later that evening they drove to Stewartville to return the children to Hanson. Walker asked her to drop him off at a truck stop while she delivered the children. As they pulled into the truck stop, Hanson was driving past and he saw Marge Hanson's car.

Hanson drove into the truck stop parking lot, parked in front of Marge Hanson's car, and got out of his car. Hanson claims he first noticed Walker at this point and saw Walker take a gun out of his coat. Hanson took his gun from his car and started shooting. He fired four shots in the parking lot, hitting Walker in the leg. Walker ran into the truck stop and into a storage room, where Hanson followed and fired another five shots. One of these shots hit Walker and killed him. Marge Hanson testified that Walker did not have a gun.

Hanson left the building, struck his wife as he met her outside the door, walked around for several minutes, and drove away. As he drove toward Rochester, he threw the gun out of the car window. Once in Rochester, he called his brother-in-

law, who advised him to turn himself over to the authorities, which he did.

The trial court sentenced Hanson to 55 months for the manslaughter conviction, an upward departure of 12 months from the presumptive 43–month sentence. The trial court based its departure on Walker's particular vulnerability caused by reduced physical capacity and on Hanson's particular cruelty. The trial court also ordered Hanson to pay $2,000 restitution for Walker's funeral expenses.

## ISSUES

1. Did the trial court abuse its discretion in departing upward from the presumptive sentence?

2. Did the trial court abuse its discretion by ordering Hanson to pay $2,000 restitution to Walker's family for funeral expenses?

## ANALYSIS

### I

"Two conditions must concur to transform murder into manslaughter: (1) The killing must have been done in the heat of passion. (2) The passion must have been provoked by words and acts of another such as would provoke a person of ordinary self-control under like circumstances." *State v. Boyce,* 284 Minn. 242, 254, 170 N.W.2d 104, 112 (1969). A conviction for manslaughter reduces the criminal culpability of the death-producing act. "It is an extenuating circumstance which the law considers in fixing the measure of the guilt and the consequent punishment for it." *Id.*

■ In sentencing Hanson on the manslaughter conviction, the trial court based its departure first on Walker's particular vulnerability because of his leg injury. In order to constitute vulnerability, the injury must be a substantial factor in accomplishing the crime and the perpetrator must know of the injury. *See State of Minnesota v. Gardner,* 328 N.W.2d 159 (Minn. 1983). The coroner testified that the wound would not cause excessive bleeding, and Hanson testified that he did not know Walker was injured. Even if Hanson knew Walker was injured, the "substantial factor" test has not been met. Walker was able to flee from Hanson after he was shot in the leg. There is no evidence that Walker would have escaped had his leg not been injured.

■ The second reason given by the trial court for upward departure is the particular cruelty of Hanson's pursuit of Walker. Cases allowing aggravation for particular cruelty have been especially egregious. *See State v. Campbell,* 367 N.W.2d 454 (Minn.1985) (victim's throat being cut ear to ear and being stabbed 17 times is particularly cruel); *State v. Udstuen,* 345 N.W.2d 766 (Minn.1984) (multiple acts of abuse against three-month-old were particularly cruel); *State v. Vogelpohl,* 326 N.W.2d 635 (Minn.1982) (hitting victim on the head at least eight times with two different hammers and stuffing victim's mouth with paper so as not to hear victim's dying sounds was particularly cruel); *State v. Rathbun,* 347 N.W.2d 548 (Minn.Ct.App.1984) (stabbing and slashing victim 23 times with a hunting knife and leaving him to die in a ditch is particularly cruel). Applying this standard, we cannot say that the record supports a finding of particular cruelty.

The stated purpose of the Sentencing Guidelines is to "reduce sentencing disparity and insure that sanctions following conviction of a felony are proportional to the severity of the offense of conviction and the extent of the offender's criminal history." Minnesota Sentencing Guidelines I, Statement of Purpose. A sentencing judge is required to use the presumptive sentence "unless the individual case involves substantial and compelling circumstances." Minnesota Sentencing Guidelines II.D.

Hanson did not commit the manslaughter of Walker in a manner significantly more serious than the typical manslaughter, and upward departure of his sentence is not warranted. *See State v. Broten,* 343 N.W.2d 38, 41 (Minn.1984).

### II

■ "A trial court has wide discretion in ordering reasonable restitution." *State v.*

*Muller,* 358 N.W.2d 72, 76 (Minn.Ct.App. 1984); *see also* Minn.Stat. § 609.10 (1984). In a homicide the deceased's next of kin or ex-spouse are also considered victims, Minn.Stat. 611A.01(b); thus, Walker's family can be recipients of restitution. While Minnesota has not yet determined that payment of funeral expenses is an appropriate form of restitution, funeral expenses are included in the Victim and Witness Protection Act, 18 U.S.C. § 3579; *see also People v. Bond,* 99 Mich.App. 86, 297 N.W.2d 620 (1980). Because the expenses are a direct result of the homicide, the trial court's restitution award is not an abuse of discretion.

However, the record must provide a factual basis for the award. *State v. Fader,* 358 N.W.2d 42, 48 (Minn.1984). We remand to the trial court to establish, through additional testimony if necessary, the reasonable amount of the expenses.

### DECISION

The manslaughter of Walker did not involve substantial and compelling circumstances warranting an upward departure in Hanson's sentence.

The payment of funeral expenses is an appropriate form of restitution, but the trial court must establish a factual basis for the amount of the award.

Affirmed in part, reversed in part and remanded.