STATE of Minnesota, Respondent,

v.

Kelly James O'BRIEN, Appellant.

No. C7–90–370.

Court of Appeals of Minnesota.

Aug. 14, 1990.

Hubert H. Humphrey, III, Atty. Gen., Paul R. Kempainen, Asst. Atty. Gen., St. Paul, Waldemar Senyk, Otter Tail County Atty., Fergus Falls, for respondent.

John M. Stuart, State Public Defender, Scott G. Swanson, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by SCHUMACHER, P.J., and HUSPENI and SHORT, JJ.

## OPINION

HUSPENI, Judge.

Appellant, Kelly James O'Brien, pleaded guilty to perjuring himself regarding annulment of a prior marriage on his application for a marriage license. Appellant's sentence included restitution to the putative bride of $2,000. Appellant, while admitting that some restitution is appropriate, alleges that restitution of this amount was error. We affirm as modified.

## FACTS

Appellant was first married in June 1983. He and his wife separated in the spring of 1984. An annulment of that marriage was not procured and a divorce was not finalized.

Early in 1988, appellant met Michelle Abbott, and on June 9, 1988, the two applied for a marriage license. On his application, appellant swore that his prior marriage had been annulled. Appellant claimed that he meant to state that he was divorced. On June 25, 1988, appellant and Abbott participated in a marriage ceremony and subsequent reception. Upon learning that appellant was still legally married to his first wife, Abbott moved out in November, 1988. A divorce decree ending appellant's prior marriage was subsequently entered.

Appellant pleaded guilty to perjury regarding the sworn statement on his marriage license application that his prior marriage had been annulled and the trial court accepted his guilty plea to that charge.

At appellant's sentencing evidence was presented regarding the costs incurred in connection with the "wedding" ceremony and reception. Abbott testified that while many of the costs were advanced by her parents, she intended to pay them back. Abbott's list of costs stated:

| | |
|---|---|
| Kenny's shoe store | 63.98 |
| Pelican Floral | 118.99 |
| Perham Printing | 90.44 |
| Treasure Moments (accessories) | 75.57 |
| Perham Jewelry | 118.65 |
| J.C. Penny's (bridal gown and father's suit) | 350.52 |
| Bostwichs (mother's dress) | 35.18 |
| Music | 300.00 |
| Pictures and Reprints | 99.50 |
| Trip | 500.00 |
| Beverages | 150.00 |
| Cake | 40.00 |
| Organist | 10.00 |
| Hall rental—reception | 25.00 |
| Attendants' gifts | 23.21 |
| K–Mart (crib, mattress and mattress cover) | 287.56 |
| TOTAL | 2,288.60 |

Appellant's 15 month sentence was stayed, he was placed on five years probation, conditions of probation were 90 days in jail, payment of $450 in fines, fees and surcharges and payment of restitution in the amount of $2,000. He contests on appeal only the obligation to pay the $2,000 restitution.

## ISSUE

Did the trial court err in ordering $2,000 restitution?

## ANALYSIS

A sentence for a criminal offense may include "payment of court-ordered restitution in addition to either imprisonment or payment of a fine, or both." Minn.Stat. § 609.10(5) (1988). Additionally,

The court, in determining whether to order restitution and the amount of restitution, shall consider the following factors:

(1) the amount of *economic loss* sustained by the victim as a result of the offense; and

(2) the income, resources, and obligations of the defendant.

Minn.Stat. § 611A.045, subd. 1 (Supp.1989) (emphasis added). Finally, in reviewing court ordered restitution, this court has generally stated that "[t]he trial court is in the best position to weigh the various sentencing options and therefore is granted broad discretion in sentencing." *State v. Ulvestad*, 414 N.W.2d 737, 741 (Minn.App. 1987), *pet. for rev. denied* (Minn. Jan. 15, 1988). More specifically, "[a] trial court has wide discretion in ordering reasonable restitution." *State v. Hanson*, 405 N.W.2d 467, 469 (Minn.App.1987) (quoting *State v. Muller*, 358 N.W.2d 72, 76 (Minn.App. 1984)).

Appellant argues that the restitution ordered does not accurately reflect the amount of "economic loss" to the victim, nor does it take into consideration the value of gifts received as a result of the wedding ceremony.

### A. *Amount of Loss*

Initially, appellant interprets the phrase "actual economic loss" to require the costs of the ceremony and reception to be "netted out" against any benefits received as a result thereof. Secondly, appellant contests certain facets of the trial court's order for restitution.

### 1. *"Actual Economic Loss"*

■ By statute:

A dispute as to the proper amount or type of restitution must be resolved by the court by the preponderance of the evidence. The burden of demonstrating the amount of loss sustained by a victim as a result of the offense and the appropriateness of a particular type of restitution is on the prosecution.

Minn.Stat. § 611A.045, subd. 3 (Supp.1989). Here, the state introduced both Abbott's affidavit of costs and her testimony regarding those costs, while appellant produced no independent evidence contradicting Abbott's claimed costs. The state produced

sufficient evidence under the statute. *See State v. Srey*, 400 N.W.2d 722, 722–23 (Minn.1987) (affidavits regarding forged checks totaling $13,158.63 were sufficient to support restitution in that amount even though the complaint mentioned that defendant forged only $150 in checks).

■ Appellant, construing "actual economic loss" to require "netting out" of costs and benefits, cites *State v. Fader*, 358 N.W.2d 42 (Minn.1984) and *Hanson* for the proposition that:

for a restitution order to be valid, it must reflect the *actual economic loss* of the victim; the trial court does not have discretion to order restitution for amounts which do not represent economic loss.

(Emphasis in original.) *Fader* and *Hanson* offer only limited support for appellant's interpretation of "actual economic loss."

In *Fader*, where as here probation was conditioned upon restitution, our supreme court stated:

If the aim of restitution is rehabilitation of the defendant, the amount should be set according to the defendant's ability to pay and need not appropriately compensate the victim. However, if the aim is to compensate the victim, then the amount should be based on the victim's injury.

&ast; &ast; &ast; &ast; &ast; &ast;

In our opinion the word "restitution" connotes restoring or compensating the victim for his loss. If the legislature intended the term to be used more loosely, as a form of punitive damages, it should have used some other word or made its particular use of the word clearer.

*Fader*, 358 N.W.2d at 48 (citation omitted).

The United States Supreme Court, in a subsequent case examining dischargeability of criminal restitution obligations in bankruptcy, stated that:

The criminal justice system is *not* operated primarily for the benefit of the victims, but for the benefit of society as a whole. Thus, it is concerned *not only with punishing* the offender, but *also* with rehabilitating him.

*Kelly v. Robinson,* 479 U.S. 36, 52, 107 S.Ct. 353, 362, 93 L.Ed.2d 216 (1986) (emphasis added). It is then concluded:

> Because criminal proceedings focus on the State's interests in rehabilitation and punishment, rather than the victim's desire for compensation, we conclude that restitution orders imposed in such proceedings operate "for the benefit of" the State. Similarly, they are *not assessed "for \* \* \* compensation" of the victim.* The sentence following a criminal conviction *necessarily considers the penal and rehabilitative interests of the State.*

*Kelly,* 479 U.S. at 53, 107 S.Ct. at 362–63 (footnote omitted) (emphasis added). *See also State v. Belfry,* 416 N.W.2d 811, 813 (Minn.App.1987) ("The state's goals in imposing restitution [include] a rehabilitative purpose.") (citing both *Kelly,* 479 U.S. at 53, 107 S.Ct. at 362–63 and *Fader,* 358 N.W.2d at 48). Thus, to the extent that appellant's citation of *Fader* presupposes that *Fader* allows restitution only to achieve an economic "status quo ante" for the victim, that citation is out of the context of subsequent United States Supreme Court case law. *Fader* must be interpreted in light of that case law.

Similarly, appellant's citation of *Hanson* to support his theory that "actual economic loss" requires calculation of a net difference between expenditures and any acquired benefits is also out of context. *Hanson,* 405 N.W.2d at 470 states:

> Because the [funeral] expenses are a direct result of the homicide, the trial court's restitution award is not an abuse of discretion.

*Hanson,* however, involved a homicide. Under the (then) relevant restitution statutes a "victim" allowed restitution in a homicide case specifically included "the deceased's surviving spouse or next of kin." Minn.Stat. § 611A.01(b) (1984). Based on this provision, the *Hanson* restitution order for the funeral expenses of the deceased was affirmed. *See also* Minn.Stat. § 611A.04, subd. 1(a) (Supp.1989). Given the *Hanson* homicide and the specific recognition to homicide "victims" in the restitution statute, the support *Hanson* lends to

appellant's reading of "actual economic loss" is minimal.

The position that restitution does not necessarily require "netting" all costs against any benefits received is consistent with prior case law. In *State v. Larson,* 393 N.W.2d 238 (Minn.App.1986), five brass bushings, four of which were new, were taken from a taconite company and sold to an iron and metal company. Upon conviction, Larson was ordered to pay restitution of $34,681 to the taconite company. On appeal this court noted that estimated values for three of the bushings varied from $3,400 to $9,600 each; that the value of the fourth was $14,509; mentioned no value for the fifth; and stated "The scrap value received by [the taconite company] after [reimbursing the iron and metal company for costs it incurred] was about $2,720." *Larson,* 393 N.W.2d at 243. This court affirmed the restitution order without modification and observed that the amount was not an abuse of the trial court's discretion. *Larson,* 393 N.W.2d at 243. Clearly, this court did not require a strict netting of costs and benefits in *Larson.*

### 2. Contested Elements of Ordered Restitution

By statute:

> A request for restitution may include, but is not limited to, any *out-of-pocket losses resulting from the crime.*

Minn.Stat. § 611A.04, subd. 1 (Supp.1989) (emphasis added). Further, this court has stated:

> Where the victim's losses are directly caused by appellant's conduct for which he was convicted there is nothing improper in ordering restitution.

*State v. Jola,* 409 N.W.2d 17, 19 (Minn.App.1987) (quoting *State v. Olson,* 381 N.W.2d 899, 901 (Minn.App.1986)).

Appellant specifically contests certain items on appellant's affidavit of expenses.

### a. Perham Jewelry

■ Abbott spent $118.65 repairing a ring given her by appellant. Abbott kept the ring. But for the perjury, there would have been no ceremony and but for the

ceremony the ring would not have needed repair. Thus, the ring repair costs are an "out-of-pocket" expense of the ceremony. The trial court did not abuse its discretion in ordering restitution for the repairs.

### b. *Clothes*

█ Abbott spent $63.98 on her shoes for the ceremony. A suit with a cost not explicitly on the record [1] and a dress costing $35.18 for Abbott's mother were also purchased for the ceremony. Appellant states:

> As there is no showing that th[e]se items have not retained any value, the court was incorrect in ordering restitution for amounts which did not reflect the economic loss to Abbott.

Abbott specifically testified that "[I] purchased white satin shoes to go along with my dress." The shoes are part of her bridal outfit and therefore an expense of the ceremony. Similarly, Abbott testified that the clothes for her parents would not have been purchased if she were not getting married. We find no abuse of the trial court's discretion in ordering restitution for these items.

### c. *Restitution on Behalf of Parents*

█ Appellant argues:

> [Abbott] seems to be claiming restitution on behalf of her mother and father for clothing items (a suit and a dress) which they presumably paid for and retained. There is no provision in the restitution statutes for the victim of a crime to claim restitution on behalf of others for their expenditures.

This argument presupposes that Abbott was not ultimately responsible for the costs of her parents' clothes. However, Abbott testified that she was "advanced" the costs of the ceremony by her parents and that she would repay her parents from the restitution.

We also note that under the restitution statute "victims" may request restitution. *See* Minn.Stat. § 611A.04, subd. 1(a) (Supp.

1989). By statute " '[v]ictim' means a natural person who incurs * * * harm as a result of a crime." Minn.Stat. § 611A.01(b) (1988). Thus, Abbott's parents could be included as "victims" under the statute because they incurred an economic harm as a result of appellant's perjury.

### d. *Trip*

█ Abbott's parents purchased a $500 trip to Mexico as a wedding gift for Abbott and appellant. Because Abbott and appellant did not take the trip, it was used by Abbott's parents instead. Neither party cites case law directly addressing whether it is appropriate to order reimbursement for something ultimately retained, intact, by allegedly aggrieved person(s). Because Abbott's parents elected to take the trip, we can discern no loss to Abbott. Further, we can discern no loss to Abbott's parents who took the trip and enjoyed the benefits derived from it. We therefore conclude that this item was inappropriately included in the list of items for which restitution was ordered.

## B. *Value of Other Gifts*

Appellant and Abbott received various gifts, including roughly $600 cash, as wedding gifts. Appellant argues that the economic gain which these gifts represent must be taken into consideration in setting restitution. We cannot agree. Appellant's argument on this issue is analogous to his argument that "actual economic loss" should be determined by "netting" all costs and benefits against each other. Because we conclude that an explicit "netting" is not required, we also conclude that the trial court did not abuse its discretion in failing to deduct the value of the gifts received from the amount of restitution.

## DECISION

The trial court did not err by ordering restitution without explicitly netting all costs and benefits associated with appel-

---

1. According to Abbott's affidavit, the cost of her bridal gown and her father's suit totaled $350.52.

lant's perjury. The trial court did, however, abuse its discretion by ordering appellant to pay restitution to the putative bride for a trip taken by her parents. Restitution must be reduced to $1,500.

Affirmed as modified.