STATE of Minnesota, Respondent,

v.

Everett William DICK, Appellant.

No. C1–87–824.

Court of Appeals of Minnesota.

March 1, 1988.

Review Denied April 15, 1988.

Hubert H. Humphrey, III, Atty. Gen., Tom Foley, Ramsey Co. Atty., Darrell C. Hill, Asst. Co. Atty., St. Paul, for State of Minnesota.

C. Paul Jones, State Public Defender, Steven P. Russett, Asst. State Public Defender, St. Paul, for Everett William Dick.

Considered and decided by WOZNIAK, C.J., and LANSING and NORTON, JJ., with oral argument waived.

## OPINION

NORTON, Judge.

This appeal is from a conviction for second-degree felony murder, Minn.Stat. § 609.19(2) (1986). Appellant E.W. Dick, who was found not guilty of second degree intentional murder, Minn.Stat. § 609.19(1), raises a number of evidentiary issues relating to his claim of self-defense. He was sentenced to the presumptive guidelines sentence of 102 months. We affirm.

## FACTS

Appellant E.W. Dick was convicted for shooting his stepdaughter's boyfriend, David Heller, the night of November 7, 1986. Dick admitted he fired a single shot at Heller but claimed he did so in self-defense, as Heller was charging him. The jury acquitted Dick of one count of second degree intentional murder, but found him guilty of second degree felony murder for causing death while committing an assault. Minn.Stat. § 609.19(2).

Heller, the father of a baby born to Dick's stepdaughter, Colleen Arechigo, often visited Arechigo and the baby at Dick's house. Dick had several confrontations with Heller over these visits and Heller's treatment of Colleen. Dick testified his wife was often upset by Colleen's constant arguments with Heller, their effect on her, and Heller's frequent visits and phone calls to the house. In August, 1986, Dick told Heller he could pick up Colleen and the baby and drop them off, but he did not want him around the house. Dick, however, testified Heller kept coming to the house, and often offered to fight him when told he was not wanted there.

Dick is a 57-year-old man with a heart condition, for which he has had coronary bypass surgery, and a small abdominal aneurysm. He had no previous criminal history. Heller, a 24-year-old man in good physical condition, was 5 feet 9 inches tall and weighed 178 pounds. Dick, who was 5 feet 6 inches and 205 pounds, testified he was afraid of Heller because of his heart condition, which doctors told him put him at risk of sudden death upon stress or sudden exertion.

Colleen Arechigo testified Dick threatened Heller in late September or early October. Dick testified he made the threat only after Heller threatened to beat Colleen and take the baby. He testified Heller often threatened to "whip his ass." The court admitted the testimony of the Rapps, Heller's aunt and uncle, that Heller told them Dick had threatened to kill him. This evidence was admitted for the limited purpose of showing Heller's state of mind on the night of the shooting.

On November 7, 1986, Heller drove Colleen and the baby back to Dick's house late in the evening. Colleen testified Heller had had a few beers and smoked marijuana. Autopsy test results showed he had a blood alcohol level of .148, and showed positive for THC.

Dick and his wife had gone to bed but were awakened by a phone call about the time Heller arrived with Colleen and the baby. Colleen, who had argued with Heller during the drive, entered the house crying, and Dick's wife, who answered the phone, saw Heller was angry. The call was for Dick, who was the keyholder at his place of employment and had to answer a

security alarm. When Dick came downstairs, he testified, Heller was in the kitchen and wouldn't leave. Dick told Heller to leave and at some point asked his wife to get his gun, which she refused to do. Colleen pushed Heller towards the door while Dick, who was attempting to reach Heller, was restrained by his wife.

Although Colleen succeeded in shutting Heller outside, Dick testified Heller was kicking at the door. Dick went upstairs to get his gun. Heller had gone to his car, which was parked on the street. Dick went out to the car, gun in hand, stepped around the rear bumper, and, as he testified, again warned Heller against coming on his property. Heller, who was sitting in his car, then exploded, as Dick testified:

[A.] * * *

Now, he kicks his door open on his car with both feet, comes out at me pulling his coat off. I was terrorized for a split second, knew I was helpless. I raised the gun and fired.

Q. What happened after you fired?

A. David stopped dead where he was standing, started forward. He backed up, leaned against the car, put his arm up a little bit and said, "You son of a bitch. You shot me and for this I'm going to kill you."

Dick then returned the gun to the house and drove off to answer the alarm call.

The police officers who secured the scene testified Heller's car door was open, and Heller's body was lying beneath the door, with his right foot caught in the doorjamb. The medical examiner, Dr. Michael McGee, testified that, from the position of the body and the trajectory of the bullet, Heller was probably shot while in the car or while opening the door to get out. He estimated Heller lost the ability to make a major movement of his body within one to two minutes. On cross-examination, he admitted the possibility that Heller was in a lunging position when struck by the bullet, but reiterated the theory most consistent with the facts was that Heller was seated in the car or getting out.

The trial court denied Dick's motion to allow him to ask the medical examiner his opinion, based on Dick's medical records, whether Dick was at risk of sudden death. The court allowed the medical examiner to translate portions of Dick's medical records into laymen's terms. Dick did not call his own doctor to testify on this matter.

At the sentencing hearing, defense counsel argued that Dick is amenable to probation, and sought a downward durational departure to 70 months. The court rejected Dick's request for a departure because of his lack of remorse and the seriousness of the offense.

**ISSUES**

1. Did the trial court abuse its discretion in excluding expert medical testimony on appellant's "risk of sudden death"?

2. Did the trial court abuse its discretion in admitting evidence appellant had previously threatened the victim?

3. Was the evidence sufficient to establish beyond a reasonable doubt appellant was not acting in self-defense?

4. Did the court abuse its discretion in imposing the presumptive sentence?

**ANALYSIS**

*1. Exclusion of expert testimony*

Dick sought the medical examiner's expert opinion to establish that he had reasonable grounds to believe he would not survive any kind of altercation with Heller, and therefore was justified in firing the shot. *See State v. Morgan,* 296 N.W.2d 397, 402 (Minn.1980) (requirements for a claim of self-defense). The trial court ruled Dr. McGee could not testify concerning Dick's physical condition because he had never examined him.

An expert may base his opinion on facts made known to him at the trial or hearing, including reliable hearsay. Minn. R.Evid. 703. Dr. McGee would have testified based on Dick's medical records. Medical records compiled for purposes of diagnosis and treatment are considered reliable and are specifically excluded from the hearsay rule. Minn.R.Evid. 803(4). Dick should have been permitted to elicit

an opinion from Dr. McGee based on Dick's medical records. *Cf. State v. Brown,* 345 N.W.2d 233, 238 n. 2 (Minn.1984) (psychiatrist could not give expert opinion based in part on pretrial conversation with defendant, not made for purposes of diagnosis or treatment). We conclude, however, the exclusion of this testimony was harmless error.

We do not address the issue whether Dick's "risk of sudden death" was a proper subject for expert testimony. *See State v. Matthews,* 301 Minn. 133, 221 N.W.2d 563 (1974) (no abuse of discretion in excluding a psychologist's expert opinion testimony whether defendant feared for his life when he shot the victim). In order to establish a claim of self-defense, a defendant must show he was not the aggressor or did not provoke the confrontation, that he had an honest belief the killing was necessary to avert death or grievous bodily harm, that there were reasonable grounds for this belief, and that he complied with his duty to retreat or avoid the necessity of killing if reasonably possible. *See Bellcourt v. State,* 390 N.W.2d 269, 272 (Minn.1986); *State v. Baker,* 280 Minn. 518, 522, 160 N.W.2d 240, 242 (1968).

There was irrefutable evidence Heller had withdrawn from the confrontation when he walked to his car, which was parked on the street. Dick became the aggressor when he renewed the confrontation by retrieving the revolver and walking out to the car. While Heller could have acted at the car so as to revive Dick's right of self-defense, the medical examiner testified that, from the position of the body and trajectory of the bullet, it was more likely Heller was seated in the car or just emerging when shot.

Dr. McGee's testimony was not unequivocal, and the jury could have found Heller lunged at Dick. However, the jury would then have had to find Dick had an actual belief the shooting was necessary to prevent a felonious assault. *See Bellcourt v. State,* 390 N.W.2d at 272. But earlier in the same evening, Dick had tried to physically confront Heller, requiring physical restraint by his wife. From these actions in

the house, the jury could have found Dick did not actually fear a physical confrontation as he testified. Finally, even if the jury found Dick had an actual belief in the necessity of shooting in self-defense, there was other evidence that his belief may have been unreasonable. Dick testified he had been told by his doctors that extreme exertion could cause his death. This testimony was not the equivalent of expert opinion given from the stand. However, viewing the evidence on self-defense as a whole, we conclude the absence of Dr. McGee's testimony did not likely affect the jury's verdict. *See State v. Posten,* 302 N.W.2d 638, 641–42 (Minn.1981).

■ We note the jury was not instructed on any lesser offense, including third-degree murder and first-degree manslaughter. Dick does not raise this issue on appeal, and, indeed, has forfeited the issue by failing to request a manslaughter charge or object to its omission. *State v. Morales,* 324 N.W.2d 374, 376 (Minn.1982); *but see State v. Leinweber,* 303 Minn. 414, 421, 228 N.W.2d 120, 125 (1975) ("in a murder case it is preeminently the trial court's duty in the exercise of its discretion to determine what lesser degrees of homicide to submit"). In an appropriate case, fright can be considered within the meaning of "heat of passion" required for first-degree manslaughter. *State v. Lee,* 282 N.W.2d 896, 899 (Minn.1979). The excluded medical opinion testimony could have been very probative in the jury's choice of a lesser offense, if submitted.

### 2. *Evidence of prior threat*

■ The trial court allowed the testimony of the Rapps concerning alleged threats by Dick against Heller. The court concluded this testimony was admissible to show Heller's state of mind, which was in issue because Dick claimed self-defense. *See State v. Blanchard,* 315 N.W.2d 427, 432 (Minn.1982) (victim's state of mind must be relevant, court must weigh probative value against risk of unfair prejudice, and limiting instruction must be given). Although we question the probative value of this evidence, given Heller's frequent visits to

the house and verbal confrontations with Dick, the Rapps' testimony was merely cumulative to Dick's admission to threatening Heller, and Colleen Arechigo's testimony to a threat.

### 3. *Sufficiency of evidence on lack of self-defense*

 Once a defendant raises the issue of self-defense, the burden is on the state to prove beyond a reasonable doubt the absence of justification. *State v. Harvey,* 277 N.W.2d 344, 345 (Minn.1979). There was ample evidence from which the jury could conclude there was no justification for shooting Heller. Since Heller had withdrawn from the confrontation, the claim of self-defense relied heavily on evidence of Heller's actions immediately before the shot. The jury, however, was the sole judge of the credibility of Dick's testimony as to Heller's actions. That testimony was not supported by the medical examiner's conclusions from the position of the body and the trajectory of the bullet.

### 4. *Sentencing*

■ Dick argues the trial court abused its discretion in denying his motion for a downward durational departure, or a dispositional departure. A reviewing court will only rarely interfere with the trial court's imposition of a presumptive sentence. *State v. Kindem,* 313 N.W.2d 6, 7 (Minn. 1981). The trial court properly considered Dick's lack of remorse in rejecting a dispositional departure. *State v. Back,* 341 N.W.2d 273, 275 (Minn.1983).

Dick contends there were substantial mitigating factors, including Heller's role as an aggressor in the incident and Dick's impairment of judgment due to his physical condition. Minnesota Sentencing Guidelines II.D.2.a.(1), (3). The evidence, however, showed Heller had withdrawn from the confrontation. Dick's physical condition was a factor primarily in determining whether he acted in self-defense. The other circumstances cited by Dick as mitigating factors are facts which may have supported submission of a manslaughter charge, but did not compel a sentencing

departure. While we might express some disagreement with the court's refusal to depart, this is not the rare case justifying reversal of a presumptive sentence.

### DECISION

The exclusion of expert testimony on appellant's physical condition was harmless error. The trial court did not prejudicially err in allowing evidence of prior threats. The evidence was sufficient to establish beyond a reasonable doubt appellant did not act in self-defense. The trial court did not abuse its discretion in refusing to depart.

Affirmed.