STATE of Minnesota, Respondent,

v.

Duane Erwin MATHEWS, Appellant.

No. C1–87–2167.

Court of Appeals of Minnesota.

June 28, 1988.

Hubert H. Humphrey, III, Atty. Gen., Paul R. Kempainen, Asst. Atty. Gen., St. Paul, Michael K. Junge, McLeod Co. Atty., Glencoe, for respondent.

C. Paul Jones, State Public Defender, Melissa Victoria Sheridan, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by CRIPPEN, P.J., and SCHUMACHER

and MULALLY * JJ., without oral argument.

## OPINION

### EDWARD D. MULALLY, Judge.

Duane Mathews appeals his conviction on two counts of first degree arson. He argues that there is insufficient evidence to support the jury's verdict, and that his indictment was invalid because one of the grand jurors was biased. We disagree, and therefore affirm.

## FACTS

Appellant Mathews owned and operated the Copper Still bar in Plato, Minnesota. Appellant, his wife, and their two young sons lived in an apartment attached to the back of the bar.

Appellant bought the Copper Still from Ron Bruch in February 1985, for $160,000 under a contract for deed. Appellant also purchased some of the bar's furnishings and inventory from Bruch under a separate contract.

Appellant made a number of repairs and improvements to the Copper Still. The Copper Still was insured for $145,000. Appellant and Bruch were coinsureds under the policy.

Evidence presented at trial indicated that appellant had some difficulty keeping current on payments to his creditors. The Copper Still grossed between $10,000 and $12,000 per month. Appellant's monthly payments on his debts to Bruch were $2,070 per month on the contract for deed, and $205 per month on the furnishings and inventory contract. He also incurred debts to food and liquor suppliers.

In June 1985 appellant missed a payment to Bruch under the contract for deed when his payment check was dishonored because of insufficient funds. Bruch served appellant with a notice of cancellation of the contract for deed, but appellant cured the default within 30 days. Appellant was behind on his VISA and Minnegasco payments as of August 1985.

Appellant testified that the business was "surviving" and would have been likely to improve in the future.

There was also evidence to show that appellant was having problems with his marriage. The Mathews were married in 1976. Appellant's wife left him for short periods of time in 1978 and 1983, because she believed that he had a drinking problem. She left again on August 4, 1985, the day before the first fire at the Copper Still.

On August 5, 1985, appellant closed the bar at 12:30 a.m. When he got back to the office, he noticed a note from his wife, saying that she had taken the two boys and gone to her sister's house, because she needed a little time to "think things over." Appellant worked on the bar's books until approximately 1:30 a.m. and went to bed.

Appellant testified that he woke up in the middle of the night when the smoke detector outside of his bedroom went off. The smoke in the apartment was so thick he could hardly see. Appellant ran across the street to a coffee shop owned by the Haney family to call the fire department. Eugene Haney testified that appellant "looked like he just got up" and was "coughing a lot."

Appellant ran back into the bedroom of the burning building to save some personal items and a bag of money holding the bar's weekend receipts.

Just as the fire department arrived, an explosion blew out a sizable section of the Copper Still's wall.

Appellant stayed on the scene for about an hour. Tim Haney, a neighbor who was also watching the fire, testified that appellant "was worried about the people in the building next door" and that he stood and watched the fire and "just kept saying, 'Why me?'"

In the morning appellant went back to the bar, and spent the rest of the day talking with police, fire and insurance investigators. The next day Bruch and appellant gave insurance adjustor Stoops a tour of the burned building.

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

Stoops testified that he informed Bruch and appellant that the insurance company would not pay benefits for a total loss if he determined that it was possible to repair or rebuild the structure. Bruch testified that Stoops indicated that the bar could probably be rebuilt.

At around 5 p.m., appellant and Bruch went to the C.C. Lounge, another nearby bar. They stayed on through the evening, drinking and playing cards with friends. Bruch left the bar at around 10:30 p.m. Tom Pinske, the owner of the local lumber yard, stopped in at the C.C. Lounge around 12:45 a.m. Pinske told appellant that he needed to pay for three pieces of plywood used to board up the Copper Still. Pinske testified that appellant replied, "Well, after tonight it isn't going to make any difference anyway." Appellant testified that he did not remember talking to Pinske or making this statement.

Appellant testified that he left the bar around 12:50 a.m., and drove to Hutchinson. At about 2:15 a.m. appellant's mother called to tell him that the Copper Still was on fire again.

Police deputy Steve Soeffker was the first to discover the fire. When he arrived at the Copper Still at 1:16 a.m., flames were coming through the bar's roof. By the time firefighters arrived on the scene the building was totally engulfed in flames and could not be extinguished. The fire totally destroyed both the Copper Still and a chiropractic clinic next door. No one was injured.

Soeffker testified that he saw both appellant and Bruch at the scene of the second fire. Soeffker testified that Bruch "appeared to be somewhat nervous or shook up" and that Bruch avoided speaking with him until later the next morning. Soeffker put both of these observations into a police report.

There is expert testimony in the record indicating that both fires at the Copper Still were set with "liquid accelerants."

Both appellant and Bruch were suspects in the arson investigation that followed. Twenty-two grand jurors voted to indict appellant on two counts of first degree arson.

One of the grand jurors, Roger Hilgers, was a volunteer fireman who had witnessed both fires. Hilgers indicated on voir dire that he had a preconceived opinion that the fire was intentionally set.

Appellant moved to dismiss the indictment, arguing, among other things, that Hilgers was biased and not qualified to serve as a grand juror in this case. The trial court granted the motion to dismiss on other grounds, but this court reversed the dismissal and reinstated the indictment. *See State v. Mathews,* 400 N.W.2d 385 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. April 17, 1987). Appellant renewed his motion to dismiss the indictment because of Hilger's alleged bias. The trial court denied the motion, finding that

> * * * while Hilgers as a volunteer fireman was present at both fires and had some conclusions regarding fire number one, the conclusions were as to the cause and not as to the suspect. Furthermore, the cause issue in light of all the other evidence (state fire marshall and investigator for insurance company) was not a close question. The evidence was quite clear that the fire was intentional and hostile * * *.

After a three day trial, a jury convicted appellant on two counts of first degree arson. He was sentenced to an executed prison term of 24 months.

## ISSUES

1. Is there sufficient evidence to support appellant's arson convictions?

2. Is appellant's indictment valid despite the alleged bias of one grand juror?

## ANALYSIS

### *Sufficiency of the Evidence*

Appellant's convictions were based on circumstantial evidence. A jury is in the best position to evaluate circumstantial evidence surrounding the crime, and its verdict is entitled to due deference. *State v. Berndt,* 392 N.W.2d 876, 880 (Minn.1986), *cert. denied,* —— U.S. ——,

107 S.Ct. 909, 93 L.Ed.2d 859 (1987); *State v. Daniels,* 380 N.W.2d 777 (Minn.1986).

As stated in *Berndt:*

> The circumstantial evidence in a criminal case is entitled to as much weight as any other kind of evidence so long as the circumstances proved are consistent with the hypothesis that the accused is guilty and inconsistent with any rational hypothesis except that of his guilt.

*Berndt,* 392 N.W.2d at 880 (quoting *State v. Jacobson,* 326 N.W.2d 663, 666 (Minn. 1982)). The evidence as a whole need not exclude all possibility that the defendant is innocent, it must only make such a theory seem unreasonable. *State v. Anderson,* 379 N.W.2d 70, 78 (Minn.1985), *cert. denied,* 476 U.S. 1141, 106 S.Ct. 2248, 90 L.Ed.2d 694 (1986). *See also State v. Larson,* 393 N.W.2d 238 (Minn.Ct.App.1986) (jury is free to disbelieve defendant's testimony setting forth alternative "reasonable explanation" of events).

On appeal this court does not retry the facts but must take the view of the evidence most favorable to the state and must assume that the jury believed the state's witnesses and disbelieved any contradictory evidence. *State v. Turnipseed,* 297 N.W.2d 308, 313 (Minn.1980) (quoting *State v. Merrill,* 274 N.W.2d 99 (Minn.1978)). If the jury, giving due regard to the presumption of innocence and to the state's burden of proving defendant guilty beyond a reasonable doubt, could reasonably have found the appellant guilty, that verdict will not be reversed. *Id. See also State v. Anderson,* 405 N.W.2d 527 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. July 22, 1987).

■ Appellant concedes on appeal that there was sufficient evidence presented to the jury to establish that the fires at the Copper Still were intentionally set. He contends that there was insufficient evidence to allow the jury to conclude beyond a reasonable doubt that he was the person who set the fires.

We disagree. The evidence presented at trial established that appellant had the motive and the opportunity to set the fires. The jury could reasonably have inferred, on the basis of the circumstantial evidence presented, that appellant had a motive to burn down the financially troubled Copper Still to use the insurance proceeds to pay off the bulk of his debts.

Appellant argues that some of the circumstantial evidence presented to the jury is inconsistent with the hypothesis that he is guilty of arson. He notes that the bar's financial problems were not particularly severe, that he made significant improvements to the property, that he lost all of his personal possessions in the fire, and that the insurance proceeds were not enough to pay all of his debts.

As stated previously, the evidence as a whole need not exclude all possibility that the defendant is innocent, it must only, in the opinion of the jury, make such a theory seem unreasonable. There is evidence in the record—most notably appellant's alleged statement "After tonight it won't make any difference anyway"—which is consistent only with the hypothesis that appellant is guilty of arson. Viewing the evidence as a whole in the light most favorable to the state, and assuming that the jury believed the state's evidence, we conclude that there is sufficient evidence to support appellant's conviction on two counts of first degree arson.

*Validity of the Indictment*

■ Appellant asserts that his indictment was invalid because one of the grand jurors, a volunteer fireman, was a witness to both fires and had a preconceived opinion that the first fire was intentionally started. The trial court interviewed the grand juror, and concluded that he was not biased. The trial court reasoned (and appellant has now conceded) that there was no real dispute that the fires were intentional, and that the grand juror's opinion as to the cause of the first fire would not prevent him from keeping an open mind on the issue of who started the fires.

The trial court was in the best position to assess the qualifications of the grand jurors. We see no error in the trial court's conclusion that the grand juror in question was unbiased and qualified to serve.

## DECISION

We affirm appellant's conviction on two counts of first degree arson.

Affirmed.