**STATE of Minnesota, Respondent,**

v.

**Fred Fritz FIDEL, Appellant.**

**No. C4–89–790.**

Court of Appeals of Minnesota.

Feb. 13, 1990.

Review Denied April 13, 1990.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin County Atty., Beverly J. Wolfe, Asst. County Atty., Minneapolis, for respondent.

John M. Stuart, State Public Defender, Jeffrey S. Sheridan, Special Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by NORTON, P.J., and HUSPENI and STONE, JJ.

## OPINION

BRUCE C. STONE, Judge.[*]

Following a jury trial, appellant Fred Fritz Fidel was convicted of second degree felony murder in violation of Minn.Stat. § 609.19, subd. 2 (1988) and brings this appeal from the judgment of conviction claiming (1) the evidence produced at trial was insufficient to support his conviction and (2) that the trial court's instructions to the jury were fundamentally flawed and constituted plain error. We affirm.

## FACTS

It is undisputed that appellant Fred Fritz Fidel stabbed Michael O'Brien on July 8, 1988, causing him to bleed to death. Appellant and the state, however, have presented differing accounts of the circumstances leading up to the stabbing.

The events involving O'Brien's death occurred on July 8, 1988 in the parking lot of an apartment complex in Minneapolis. O'Brien came to the apartment building with five minors, in order to purchase marijuana from one of the minors who resided in the complex. Another group of minors was also present at the scene for the same purpose. A number of the young men were congregated around O'Brien's car, a classic 1966 Chevrolet Impala which O'Brien was in the process of restoring.

Appellant pulled into the parking lot and attempted to pull his car part of the way into the very limited space available next to O'Brien's car, almost hitting it. Although none of the building's tenants were assigned designated parking spaces, appellant habitually parked in the parking spot

[*] Acting as judge of the court of appeals by appointment pursuant to Minn. Const. art. VI, § 2.

directly adjacent to the spot in which O'Brien had parked and in which many of the young men were standing. Although many other parking spaces were available, appellant pulled up to the spot where the men were standing and repeatedly honked his horn. At that time, O'Brien told appellant, "If you scratch my car, I'll kick your ass."

Appellant then got out of his car, entered into an altercation with O'Brien, and pulled out a knife, "brandishing it" back and forth in front of O'Brien. O'Brien originally backed away as appellant walked toward him.

After a short time, appellant got back into his car and attempted to pull further into the parking space. Appellant then got out of his car, leaving it in such a position that O'Brien would be unable to move his car to leave.

As appellant walked toward the building, O'Brien went toward him, advising appellant that he was blocking O'Brien's car and offering to move it for him. During this second confrontation, appellant again pulled out his knife. O'Brien told appellant to "back off, everything is cool." Appellant, however, grabbed O'Brien by the shirt with one hand and as O'Brien tried to remove himself from appellant's grasp, appellant thrust the knife into O'Brien's chest with his other hand.

After he was stabbed, O'Brien clutched his chest and ran, shouting for someone to call the police and an ambulance. Appellant appeared to pursue O'Brien to "go after him again." One of the minors intervened and kicked appellant, knocking him to the ground.

Appellant testified that when he arrived at the apartment building, the youths accosted him, threatened him and called him names, using racial slurs. Appellant stated the group knocked him to the ground and beat him. Appellant claims he pulled his knife to defend himself. He stated that although he did not recall specifically stabbing O'Brien, he did recall swinging his knife from side to side.

Appellant testified that as he got up and headed toward the apartment building, O'Brien stood directly in front of him, blocking his access, and that the other youths surrounded him on all sides. Appellant stated his infirmities kept him from running away.

When appellant was arrested, he denied at first knowing anything about the stabbing or possessing a knife. Later, in his statement three days after his arrest, appellant said he did not recall if he stabbed the victim. At that time, appellant admitted to having a steak knife in his car but denied having a buck knife (lock-blade type). During his grand jury testimony, however, appellant admitted to having a lock-blade type knife and claimed that he had used it to defend himself against an attack by the youths.

Following trial in the Hennepin County District Court, appellant was found guilty of one count of second degree felony murder in violation of Minn.Stat. § 609.19, subd. 2, but was acquitted of second degree intentional murder.

## ISSUES

1. Was the evidence produced at trial sufficient as a matter of law to support the jury's finding that appellant was guilty of second degree felony murder?

2. Did the trial court fundamentally err in instructing the jury that the verdict reached by them must be unanimous?

3. Did the trial court err in failing to instruct the jurors as to the proper self-defense standard for second degree felony murder?

## ANALYSIS

1. *Standard of Review.*

When reviewing whether the evidence was sufficient to support a conviction, this court must determine whether, upon review of the record and the legitimate inferences that could be drawn from it, a jury could reasonably have concluded that the defendant was guilty. *State v. Daniels*, 361 N.W.2d 819, 826 (Minn.1985); *State v. Turnipseed*, 297 N.W.2d 308, 313 (Minn. 1980). This court must view the evidence

in a light most favorable to the verdict and assume that the jury believed the state's witnesses and disbelieved any contrary evidence. *State v. Jones,* 347 N.W.2d 796, 800 (Minn.1984).

Appellant's conviction may be affirmed only if the jury, acting with due regard for the presumption of innocence and the necessity of overcoming that presumption by proof beyond a reasonable doubt, could reasonably have found that the appellant was proven guilty of second degree felony murder. *See Daniels,* 361 N.W.2d at 826. The evidence as a whole need not exclude all possibility that a defendant is innocent. It must only make such a theory seem unreasonable. *State v. Mathews,* 425 N.W.2d 593, 596 (Minn.Ct.App.1988).

Appellant was convicted of second degree felony murder, the elements of which are set forth in Minn.Stat. § 609.19 (1988) which provides:

> Whoever does either of the following is guilty of murder in the second degree and may be sentenced to imprisonment for not more than 40 years: ·
>
> (1) Causes the death of a human being with intent to effect the death of that person or another, but without premeditation, or
>
> (2) Causes the death of a human being, without intent to effect the death of any person, while committing or attempting to commit a felony offense other than criminal sexual conduct in the first or second degree with force or violence.

Appellant does not deny he stabbed O'Brien or that the wound he inflicted ultimately caused O'Brien's death. Rather, appellant maintains he acted in self-defense and that his actions were legally justified.

The Minnesota Supreme Court has established the following criteria to determine under what circumstances the use of deadly force is justified under Minn.Stat. § 609.06 (1988):

> (1) The killing must have been done in the belief that it was necessary to avert death or grievous bodily harm.
>
> (2) The judgment of the defendant as to the gravity of the peril to which he was exposed must have been reasonable under the circumstances.
>
> (3) The defendant's election to kill must have been such as a reasonable man would have made in light of the danger to be apprehended.

*State v. Austin,* 332 N.W.2d 21, 24 (Minn. 1983).

"It is the burden of the state—once the issue of justification is raised—to establish beyond a reasonable doubt that the killing was not justifiable." *Id.* at 23. The state may establish that the killing was not justifiable by establishing beyond a reasonable doubt the nonexistence of any of the elements. *See State v. Buchanan,* 431 N.W.2d 542, 548 (Minn.1988).

### 2. *Claims of Appellant.*

■ First, appellant claims his belief that he was in imminent danger of death or great bodily harm was not unreasonable. Appellant was 52 years old at the time of the incident and had reduced muscle in his chest as a result of cancer surgery. Appellant additionally suffered from a partial involuntary semi-paralysis on his right side due to a spinal injury. Appellant maintains that given his age and infirmities, it was reasonable for him to believe that any assault may have resulted in his death or at least great bodily harm. The testimony at trial, however, revealed that other than a limp, appellant did not appear to be suffering from any physical disabilities at the time of the incident.

The testimony supported the evidence that prior to the stabbing, neither the victim nor the other young men present in the parking lot assaulted or touched appellant. One surrounded by a group of hostile young men could reasonably fear for his or her well-being. However, the weight of the testimony, including testimony by witnesses not associated with the group of men appellant claimed were assaulting him, indicated that appellant's pathway to the apartment was not blocked during his confrontation with O'Brien.

Because appellant had not been physically assaulted by O'Brien or the other young men present prior to the stabbing and

O'Brien was not attempting to physically assault appellant or block his escape, the jury was entitled to find that a reasonable person in appellant's situation would not have concluded it was necessary to stab O'Brien in order to avoid serious bodily harm. *See State v. Dick*, 419 N.W.2d 828, 832 (Minn.Ct.App.1988), *pet. for rev. denied* (Minn. Apr. 15, 1988).

■ Second, appellant claims his election to use a knife was a decision a reasonable person would have made in light of the danger confronting him. In determining whether appellant acted reasonably, the focus of the inquiry is not upon what he might have done, but rather upon the reasonableness of what he did do. *See State v. Housley*, 322 N.W.2d 746, 751 (Minn. 1982). Here, the record indicates that immediately prior to the stabbing O'Brien raised his hand and said, "Back off, everything is cool. We don't need this." The testimony clearly indicated appellant's path to the apartment building was not blocked.

Third, appellant argues he was not the aggressor in the incident. Appellant contends that despite the earlier confrontation with O'Brien in which appellant backed O'Brien away at knifepoint, O'Brien again accosted appellant on the way to his apartment.

Appellant points to testimony by the state's witnesses that appellant, after engaging in the initial argument with O'Brien and after getting out of his car a second time, left the area and walked towards his apartment building.

The testimony reveals, however, that appellant had parked his car so that it was impossible for O'Brien to move his vehicle. O'Brien then approached appellant and told appellant that appellant should either reposition his car or allow him to reposition the car. Although O'Brien approached appellant, it was appellant who initiated the contact with O'Brien prior to stabbing him. Furthermore, after stabbing O'Brien, appellant appeared to pursue O'Brien in an effort to stab him again.

■ The only evidence introduced at trial that supported appellant's self-defense claim was appellant's own testimony. It is not necessary that the jury be required to credit this testimony. *See State v. Berry*, 309 N.W.2d 777, 784 (Minn.1981); *see also Mathews*, 425 N.W.2d at 596 (the evidence as a whole need not exclude all possibility that the defendant is innocent, it must only make such a theory seem unreasonable).

The record shows the jury had reasonable grounds upon which to reject appellant's testimony. Appellant's testimony that he was physically assaulted by the youths is directly at odds with the testimony of all the other witnesses at the scene. Additionally, appellant's testimony was inconsistent with his prior statements about the stabbing following his arrest. Such inconsistencies provide a reasonable basis for the jury to reject appellant's testimony that he was acting in self-defense when he stabbed O'Brien.

### 3. *Unanimous Verdict.*

■ Appellant argues the trial court committed fundamental error when it instructed the jurors that they must reach a unanimous verdict. At the end of the trial, the court charged the jury as follows:

There are 12 of you on this jury and *all of you must agree to a verdict.* Some of you have sat as jurists on civil matters where you were permitted, after so many hours of deliberation, to return a 5–6 verdict. In other words, 10 out of the 12 of you could return a verdict. There is no fractional verdict in a criminal case. *The jury's verdict must be unanimous.*

Upon retiring to the jury room, the regular jurors will select one of their members to act as the foreperson, who will preside over your deliberations, and who will sign *the verdict to which you must all agree.* As soon as you have *unanimously agreed upon your verdict,* the foreperson must sign and date it and return it to this courtroom.

Appellant maintains that because a jury in a criminal case is not required to reach a verdict, the trial court's instruction was erroneous. In *State v. Martin*, 297 Minn. 359, 367, 211 N.W.2d 765, 769 (1973), the Minnesota Supreme Court stated that:

A hung jury is a legitimate end of a criminal trial, and is the occasionally inevitable result of requiring a unanimous verdict beyond a reasonable doubt.

*Id.*

*Martin,* however, may be distinguished from the matter at hand. In *Martin,* the instruction as to unanimity was given to a jury which was deadlocked. In contrast, the instruction given by the trial court in this case was given prior to the jury's deliberations. The rationale of *Martin* is to preclude a trial court from intruding into the jury's deliberations and from coercing a minority among a deadlocked jury to enter into a unanimous verdict.

Here, the trial court additionally instructed the jury pursuant to CRIM. JIG 3.04, stating:

> [Y]ou should not change your opinion merely because one or more or all of your fellow jurors have come to a different conclusion, nor should you change your opinion for the mere purposes of returning a verdict.

Notwithstanding the trial court's admonition that a verdict must be unanimous, the trial court clearly requested that the jurors respect their own views and not change their opinion for the purpose of returning a verdict. We hold the trial court's comments concerning a unanimous verdict were not fundamentally erroneous where the jury was appropriately additionally instructed. *See State v. Vann,* 372 N.W.2d 750, 753 (Minn.Ct.App.1985) (where predeliberation comments are neither coercive nor prejudicial there is no reversible error), *pet. for rev. denied* (Minn. Sept. 26, 1985).

### 4. *Self–Defense.*

■ Appellant was charged and tried for both second degree intentional murder and second degree felony murder, but was convicted of second degree felony murder only. The trial court instructed the jury as to the standard for self-defense pursuant to CRIM. JIG 7.05. The trial court stated:

> No crime is committed when a person takes the life of another person, even intentionally, if a defendant's action is taken in resisting or preventing an offense which he reasonably believes exposes him to death or grave bodily harm.

In order for Mr. Fidel's actions to be lawful, three conditions must be met:

First, Mr. Fidel *must have defended himself as he did in the belief that it was necessary to prevent his own death or grave bodily harm.* "Grave bodily harm" means bodily injury which creates a high probability of death, or which causes serious permanent disfigurement, or which causes a permanent or protracted loss or impairment of the function of any bodily member or organ or other serious bodily harm.

Second, the judgment of Mr. Fidel as to the gravity of the danger to which he was exposed must have been reasonable under the circumstances.

Third, Mr. Fidel's *election to defend himself* must have been such as a reasonable man would have made in light of the danger perceived and the existence of any alternative of avoiding the danger. All three conditions must be met, but the State has the burden of proving beyond a reasonable doubt that Mr. Fidel did not act in self-defense.

While appellant admits such an instruction was proper as to intentional murder, appellant maintains the trial court erred in not also providing the jury with a felony murder self-defense instruction pursuant to CRIM. JIG 7.06 which states:

> Defendant is not guilty of a crime, if he used reasonable force to resist an offense against the person, and such an offense was being committed or defendant reasonably believed that it was.
>
> It is lawful for a person who is being assaulted and who has reasonable grounds to believe that bodily injury is about to be inflicted upon him, to defend himself from such attack, and in doing so he may use all force and means which he believes to be reasonably necessary and which would appear to a reasonable person, in similar circumstances, to be necessary to prevent the injury which appears to be imminent.
>
> The kind and degree of force which a person may lawfully use in self-defense

is limited by what a reasonable person in the same situation would believe to be necessary. Any use of force beyond that is regarded by the law as excessive.

The state has the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense.

10 Minnesota Practice, CRIM. JIG 7.06 (1985).

The Minnesota Supreme Court has held that CRIM. JIG 7.06 is the appropriate self-defense standard for second degree felony murder. *State v. Edwards*, 343 N.W.2d 269, 277 (Minn.1984).

Appellant maintains that if the jury was instructed as to the standards set forth in CRIM. JIG 7.06, it could have reasonably found that appellant was justified in committing the acts constituting a second degree assault. Appellant contends such a finding would preclude a conviction on second degree felony murder since an assault felony in this case is an essential element of felony murder. *See State v. Irby*, 368 N.W.2d 19, 22 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. July 11, 1985).

The supreme court has made it clear that "the trial court should use analytical precision in instructing on self-defense." *Edwards*, 343 N.W.2d at 277. In this case appellant's trial counsel did not object to the court's failure to include CRIM. JIG 7.06 in its jury instructions. Appellant maintains that under the plain error doctrine, a defendant may obtain relief from an error at trial to which he did not object if the error seriously affects a substantial right and was prejudicial. *See State v. Shoop*, 441 N.W.2d 475, 480 (Minn.1989); *State v. Parker*, 417 N.W.2d 643, 647 (Minn.1988). The question arises, therefore, whether the court's omission of CRIM. JIG 7.06 affected a substantial right of appellant so as to render the trial fundamentally unfair. *Shoop*, 441 N.W.2d at 475.

In *State v. Sanders*, 376 N.W.2d 196 (Minn.1985), the supreme court again considered a trial court's instruction pursuant to CRIM. JIG 7.05 in a case involving a conviction for second degree felony murder. The *Sanders'* court stated:

In this case the defendant did not claim that the killing was accidental. Rather, he admitted that he must have used the knife to defend himself but that he did not intend to kill the victim. As we held in *State v. Malaski*, 330 N.W.2d 447 (Minn.1983), it is inappropriate in such a case for the trial court to state that the defendant's "election to kill" must have been reasonable; instead, the trial court should state that the defendant's "election to defend himself in the way he did" must have been reasonable. *Id.* at 453.

Arguably, the instruction in this case that "the killing must have been done in the belief that it was necessary to avert death or great bodily harm" is language that would better fit a case in which the defendant claimed he intentionally killed in self-defense. However, considering the entire instruction on self defense in the context of the entire case, including the arguments of counsel, we conclude that any technical deficiency in the self-defense instruction in this respect was nonprejudicial.

*Id.* at 201.

Here, the trial court instructed the jury to consider whether appellant *"defended himself as he did* in the belief that it was necessary to prevent his own death or grave bodily harm." The trial court did not instruct the jury to consider whether his *election to kill* was reasonable. Although CRIM. JIG 7.06 would have been more appropriate under the circumstances of this case, such an instruction was not requested by appellant's counsel. We hold any technical deficiency in the instruction did not prejudice appellant under the *Sanders* doctrine. Considering the trial court's instruction in the context of the entire case, appellant was not fundamentally deprived of a fair trial.

### DECISION

The evidence introduced at trial was sufficient as a matter of law to support appellant's conviction for second degree felony murder. The trial court's instructions concerning the unanimity of the jury's verdict did not constitute fundamental error. Any

technical deficiency in the self-defense instruction was nonprejudicial and did not deprive appellant of his fundamental right to a fair trial. Accordingly, the conviction is affirmed.

Affirmed.