**STATE of Minnesota, Respondent,**

v.

**James Allen BARBER, Appellant.**

**No. C2-92-832.**

Court of Appeals of Minnesota.

Jan. 5, 1993.

Review Denied Feb. 25, 1993.

498

Hubert H. Humphrey, III, Atty. Gen., St.
Paul, Jeffrey D. Thompson, Rice County

Atty., Karen R. Lewis, Asst. County Atty., Faribault, for respondent.

John M. Stuart, State Public Defender, Jean M. Gerval, Asst. Public Defender, St. Paul, for appellant.

Considered and decided by SHORT, P.J., and PARKER and PETERSON, JJ.

## OPINION

PARKER, Judge.

Appellant James Barber challenges his conviction and sentence for first-degree criminal sexual conduct under Minn.Stat. § 609.342, subd. 1(a) (1990). Barber argues the trial court erred by excluding evidence of a prior inconsistent statement made by the victim and also contends the admission of *Spreigl* evidence, based on a court-appointed psychologist's report, violated his Fifth and Sixth Amendment rights. Barber further argues he was improperly sentenced as a patterned sex offender. Finally, Barber claims the evidence was insufficient to support his conviction. We affirm.

## FACTS

In August 1991, seven-year-old H.B. told her mother that she had seen her father, James Barber, at her great-grandmother's house a few weeks earlier. H.B. told her mother that when she was at her great-grandmother's, she went upstairs to use the bathroom. When she walked out of the bathroom, Barber asked H.B. to go into his bedroom. H.B. testified that Barber then took off her swimming suit and inserted his finger into her vagina.

After H.B. reported the incident to her mother, the authorities were notified and Barber was subsequently arrested. On August 28, 1991, Rice County investigators interviewed H.B. A videotape of the interview was made and admitted into evidence at Barber's trial. In the videotaped interview, H.B. again states that Barber had inserted his finger into her vagina and that

Barber had done the same thing to her on two previous occasions while her parents were still living together.

At the conclusion of the prosecution's case, the prosecution sought to introduce *Spreigl* evidence of three acts: Barber's 1982 juvenile adjudication for second-degree criminal sexual conduct involving a ten-year-old girl; Barber's 1989 conviction for second-degree criminal sexual conduct involving an eight-year-old boy; and, a confession made by Barber to a court-appointed psychologist during a presentence investigation following his 1989 conviction in which he admitted sexually abusing a niece in 1986. Over defense counsel's objection that the confession was privileged information, the trial court admitted all three incidents as *Spreigl* evidence.

The defense sought to introduce a videotaped statement of H.B. made in 1989 in which H.B. allegedly states Barber never touched her "in a bad way." Defense counsel argued H.B.'s statement was inconsistent with the 1991 videotaped statement, shown to the jury, in which H.B. states Barber had abused her on two other occasions. The 1989 videotape was apparently made by Barber's sister who, at the time the tape was made, purportedly was trying to adopt H.B. and her siblings. The trial court refused to admit the 1989 tape into evidence.

Barber was subsequently convicted of first-degree criminal sexual conduct under Minn.Stat. § 609.342, subd. 1(a) (1990). The presumptive sentence provided for in the sentencing guidelines was 110 months. The trial court concluded Barber was a patterned sexual offender within the meaning of Minn.Stat. § 609.1352 (1990) and sentenced him to 220 months, executed.[1]

## ISSUES

1. Did the trial court err by excluding an allegedly prior inconsistent statement made by H.B.?

---

1. We note that the trial court actually gave Barber the statutory minimum enhancement per Minn.Stat. § 609.1352 even though Barber's pro-

bation officer had recommended he be sentenced to 444 months.

2. Did the admission of *Spreigl* evidence, based on a court-appointed psychologist's report, violate Barber's Fifth and Sixth Amendment rights?

3. Was Barber properly sentenced as a patterned sex offender pursuant to Minn. Stat. § 609.1352?

4. Was the evidence sufficient to support the conviction?

## DISCUSSION

### I

■■■ Rulings on evidentiary matters generally rest within the discretion of the trial court. *State v. Brown,* 455 N.W.2d 65, 69 (Minn.App.1990), *pet. for rev. denied* (Minn. July 6, 1990). Even if the trial court errs in an evidentiary ruling, "a reversal is warranted only when the error substantially influences the jury to convict." *Id.* (quoting *State v. Loebach,* 310 N.W.2d 58, 64 (Minn.1981)).

■■■ Extrinsic evidence of a prior inconsistent statement made by a witness is not admissible unless the witness is given an opportunity to explain or deny the statement and the opposite party is given the opportunity to question the witness thereon. Minn.R.Evid. 613(b). In addition, in order to impeach a witness through use of a prior inconsistent statement, there must be foundation testimony indicating the statements are indeed inconsistent. *State v. Vance,* 254 N.W.2d 353, 358 (Minn.1977).

■■■ Barber argues the trial court erred by excluding the allegedly inconsistent 1989 videotaped statement in which H.B. purportedly denied Barber sexually abused her.[2] Barber's trial counsel failed to lay adequate foundation for the 1989 videotaped statement. On appeal, however, Barber argues no foundation need be laid because H.B. was only five years old at the time of the videotape and seven years

old at trial. He maintains that none of the reasons justifying the foundation requirement would be served by giving H.B. the opportunity to explain her previous statement.[3]

We are unpersuaded by Barber's argument for two reasons. First, Minn.R.Evid. 613(b) does not distinguish between an adult and child for purposes of affording a witness an opportunity to explain or deny a prior inconsistent statement. Second, we believe it is even more critical that foundation be laid under these circumstances, because a five-year-old child is often very suggestible. Because H.B. was not given the opportunity to explain the alleged inconsistency, we conclude the statement was properly excluded.

### II

■■■ A trial court's decision to admit *Spreigl* evidence will not be reversed on appeal unless a clear abuse of discretion is shown. *State v. Rainer,* 411 N.W.2d 490, 497 (Minn.1987); *State v. Cichon,* 458 N.W.2d 730, 733 (Minn.App.1990), *pet. for rev. denied* (Minn. Sept. 28, 1990). *Spreigl* evidence must be (1) clear and convincing, (2) relevant and material, and (3) more probative than prejudicial. *State v. Doughman,* 384 N.W.2d 450, 454 (Minn.1986). A defendant bears the burden of proving that the trial court erred in admitting the evidence and that he was prejudiced by its admission. *State v. Slowinski,* 450 N.W.2d 107, 113 n. 1 (Minn.1990).

■■■ Following his 1989 conviction for second-degree criminal sexual conduct, Barber submitted to a court-ordered psychological evaluation conducted by Gerald Kaplan, a licensed psychologist. During the evaluation Barber admitted he had sexually abused his niece in 1986. The trial court allowed introduction of this admission as *Spreigl* evidence. On appeal, Bar-

2. We are troubled that the trial court did not view the videotape. While we realize the tape was over an hour long, it could have been of great assistance to this court to have had the trial court's response to the tape. We note the videotape is not part of the record on appeal.

3. Requiring foundation is necessary (1) to avoid unfair surprise to the adversary; (2) to save time, as an admission by the witness may make the extrinsic proof unnecessary; and (3) to give the witness, in fairness to him, a chance to explain the discrepancy. *Carroll v. Pratt,* 247 Minn. 198, 203, 76 N.W.2d 693, 697–98 (1956).

ber claims the admission of this incriminating statement violated his Fifth and Sixth Amendment rights. We disagree.

The Fifth Amendment provides, "[n]o person shall be compelled in any criminal case to be a witness against himself." "A defendant does not lose this protection by reason of his conviction of a crime." *Minnesota v. Murphy*, 465 U.S. 420, 426, 104 S.Ct. 1136, 1141, 79 L.Ed.2d 409 (1984). The Fifth Amendment, however, does not preclude a witness from testifying voluntarily in matters which may incriminate himself. *Murphy*, at 427, 104 S.Ct. at 1142, (quoting *United States v. Monia*, 317 U.S. 424, 427, 63 S.Ct. 409, 410, 87 L.Ed. 376 (1943)). If a defendant desires the protection of the Fifth Amendment privilege, it must be claimed; otherwise the defendant will not be considered to have been compelled. *Id.*

In *Murphy*, an individual on probation (Murphy) was under court order to report to his probation officer and to answer all questions truthfully. The probation officer intentionally asked questions designed to elicit a confession incriminating Murphy for a rape-murder. Murphy subsequently confessed, and the information revealed to the probation officer was used to convict him. Arguing violations of the Fifth and Fourteenth Amendments, Murphy sought to suppress evidence of his confession. *Id.* 465 U.S. at 425, 104 S.Ct. at 1141.

The Supreme Court concluded that since there was no evidence of coercion and Murphy chose to answer questions without claiming the Fifth Amendment privilege, his disclosures were not compelled incriminations. *Id.* at 440, 104 S.Ct. at 1149. Moreover, the Court held that no *Miranda* warning was required before the probation officer questioned Murphy. *Id.* at 431, 104 S.Ct. at 1144. Similarly, numerous federal courts have concluded *Miranda* warnings are not required prior to routine postconviction, presentence interviews and have admitted incriminating statements made during an interview. *United States v. Davis*, 919 F.2d 1181, 1186 (6th Cir.1990); *United States v. Rogers*, 899 F.2d 917, 921 (10th Cir.1990); *Baumann v. United States*, 692 F.2d 565, 576 (9th Cir.1982). As one court noted,

> [a] routine post-conviction presentence interview * * * does not constitute the type of inherently coercive situation and interrogation by the government for which the *Miranda* rule was designed. That is true even though the defendant is in custody and the consequence of an admission might be more severe punishment.

*Rogers*, 899 F.2d at 921.

Consequently, unless the defendant asserted the Fifth Amendment privilege, any incriminating statements made during the presentence interview could be used against the defendant without violating constitutional protections. *See Murphy*, 465 U.S. at 440, 104 S.Ct. at 1149 (since Murphy had not been compelled to incriminate himself, he could not prevent his confession from being used against him in a criminal prosecution).

We conclude that Barber was not entitled to *Miranda* warnings prior to his presentence interview. We note there was no evidence of coercion or overreaching by Kaplan. Barber does not argue that Kaplan attempted to extract a confession of other criminal activity or that he coerced, cajoled, or prodded him. To the contrary, Kaplan's report indicates:

> Mr. Barber became emotional and implied to the polygraph examiner he wanted to disclose additional information he had been withholding. At that time, Mr. Barber informed the interviewers that he had sexually abused his niece.

Accordingly, because Barber did not assert his Fifth Amendment privilege and there was no evidence the confession was coerced, we conclude the admission of his incriminating statement, as *Spreigl* evidence, did not violate his Fifth Amendment rights.

■ Barber also argues his Sixth Amendment right to counsel was violated. We disagree. Numerous federal courts have held that a postconviction presentence interview does not constitute "a critical stage" of the proceedings for which a defendant has a Sixth Amendment right to

counsel. *Rogers*, 899 F.2d at 923; *United States v. Jackson*, 886 F.2d 838, 843, 845 (7th Cir.1989); *Brown v. Butler*, 811 F.2d 938, 941 (5th Cir.1987); *Baumann*, 692 F.2d at 578. While the above-cited cases are not controlling authority, we find them persuasive and conclude Barber's Sixth Amendment challenge is without merit.

### III

After Barber's 1991 conviction, the trial court ordered a presentence investigation requiring Barber to meet with Gerald Kaplan for another psychological evaluation. Barber refused.

At the sentencing hearing, the trial court concluded Barber was a patterned sex offender within the meaning of Minn.Stat. § 609.1352 (1990) and sentenced him accordingly. Minn.Stat. § 609.1352, subd. 1(3), provides in relevant part:

A court may sentence a person to a term of imprisonment of not less than double the presumptive sentence under the sentencing guidelines and not more than the statutory maximum * * * if:

the court finds that the offender needs long-term treatment or supervision beyond the presumptive term of imprisonment and supervised release. The finding must be based on a professional assessment by an examiner experienced in evaluating sex offenders that concludes that the offender is a patterned sex offender. The assessment must contain the facts upon which the conclusion is based, with reference to the offense history of the offender or the severity of the current offense, the social history of the offender and the results of an examination of the offender's mental status.

Barber argues the trial court's finding that he needs long-term treatment or supervision beyond the presumptive term of imprisonment was not based on a professional assessment as required by the statute. Because there was no current psychological data, Barber contends, the trial

court's finding is unsupported by a professional assessment. We disagree.

After Barber refused to meet with Kaplan, the psychologist prepared a supplemental report based on his 1989 evaluation, Barber's recent behavior, and his criminal file. Kaplan submitted this report to the trial court. The trial court concluded that the 1989 evaluation, when coupled with his 1991 supplemental report which notes the fact that treatment had been attempted unsuccessfully at both the ITPSA program at St. Peter Hospital and at Alpha Human Services, was sufficient to meet the statutory requirements. Given Barber's refusal to submit to another evaluation,[4] we agree with the trial court's conclusion.

In his supplemental report, Kaplan concluded:

Mr. Barber is a sexually maladjusted and impulsive individual who appears to be attracted to both male and female children. This is the defendant's third separate sex crime conviction involving prepubertal children. In addition, he has admitted to molesting his niece over five years ago while babysitting her. * * * He did not avail himself of treatment while incarcerated and voluntarily terminated treatment when he was previously on probation. Given this defendant's offense history, history of emotional difficulties, aversion to the truth, and relative disinterest in treatment, he must be viewed as a patterned sex offender who presents a danger to the community and needs long-term supervision and control to reduce the risk of reoffending.

As required by the statute, Kaplan specifically addressed Barber's offense and social history, the severity of his actions, and his mental status. Based on Kaplan's reports, the trial court specifically found Barber to be a sexual predator of young children, that he is a danger to public safety, and that he needs long-term treatment beyond the presumptive term of imprisonment. Given the trial court record and

---

**4.** Even if there were insufficient psychological data to sentence Barber as a patterned sex offender, an upward departure in sentencing would be warranted given his abuse of his position of authority, H.B.'s age and his prior conviction for child sexual abuse. Minn.Sent.Guidelines II.D(2)(b)(1); II.D(2)(b)(4)(d); II.D(2)(b)(4)(e).

Kaplan's evaluations, we conclude the trial court correctly determined Barber to be a patterned sex offender and appropriately sentenced him to 220 months.

## IV

■ Finally, Barber argues the evidence was insufficient to support his conviction. When reviewing an insufficiency of the evidence claim, this court must determine whether, upon review of the evidence and any reasonable inferences that can be drawn from it, a jury could reasonably find the defendant guilty. *State v. Fidel*, 451 N.W.2d 350, 352 (Minn.App. 1990), *pet. for rev. denied* (Minn. Apr. 13, 1990). In conducting this review, the court views the evidence in a light most favorable to the state and assumes the jury believed the state's witnesses and disbelieved evidence to the contrary. *State v. Wahlberg*, 296 N.W.2d 408, 411 (Minn. 1980).

Barber was convicted of first-degree criminal sexual conduct pursuant to Minn. Stat. § 609.342, subd. 1(a), which provides:

A person who engages in sexual penetration with another person is guilty of criminal sexual conduct in the first degree if any of the following circumstances exists:

(a) the complainant is under 13 years of age and the actor is more than 36 months older than the complainant.

Digital penetration constitutes sexual penetration for purposes of the statute. *See* Minn.Stat. § 609.341, subd. 12 (1990).

■ We conclude there is ample evidence to support Barber's conviction. In H.B.'s trial testimony, videotaped interview and statements to her mother, she consistently reported that Barber inserted his finger into her vagina. A complainant's testimony does not require corroboration in a prosecution for criminal sexual conduct in either the first or second degree. *State v. Mosby*, 450 N.W.2d 629, 635 (Minn.App. 1990), *pet. for rev. denied* (Minn. Mar. 16, 1990) (child's consistent testimony and prior statements as to significant details sufficient to support conviction). The jury obviously believed H.B.'s testimony. An appel-

late court will not substitute its judgment as to witness credibility. *See State v. Boitnott*, 443 N.W.2d 527, 531 (Minn.1989). Accordingly, we conclude the evidence was sufficient to support Barber's conviction.

## DECISION

Affirmed.